## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PELLEGRINO FOOD PRODUCTS, INC., | : | |
| Plaintiff, | : | Case No.: 1:05-CV-00189 |
| v. | : | |
| RHEON U.S.A., | : | |
| Defendant, | : | |
| v. | : | |
| PELLEGRINO FOOD PRODUCTS COMPANY, INC. a/k/a PELLEGRINO FOOD PRODUCTS, INC., | : | |
| Counterclaimant Defendant, | : | |
| and | : | |
| CALIFORNIA FIRST LEASING CORPORATION, | : | |
| Counterclaim Defendant. | : | |

## MEMORANDUM OF LAW OF COUNTERCLAIM DEFENDANT CALIFORNIA FIRST LEASING CORPORATION IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM COUNTS VIII, IX, X & XI PURSUANT TO FED. R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   FACTS AS ALLEGED BY RHEON ...........................................................................3

III.  LEGAL ARGUMENT...................................................................................................5

A.    Legal Standards For a Motion to Dismiss Pursuant to FRCP 12(b)(6) ...........................5

B.    Rheon Fails to State a Claim for Breach of Contract Because It Admits that Both
      Purported Contracting Parties Deny the Existence of a Contract......................................6

C.    Rheon's "Unjust Enrichment" Claim Fails Because It Has Not Pled
      That CalFirst Was Unjustly Enriched...............................................................................7

D.    Rheon's "Promissory Estoppel" Claim Should Be Dismissed Because Rheon Admits
      that CalFirst Never Promised to Pay and that Financing Was a Non-essential Term
      Governing Only the Timing of Its Shipment to Pellegrino .............................................8

E.    Rheon's "Account Stated" Claim Should Be Dismissed.................................................12

IV.   CONCLUSION............................................................................................................13

1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bryan v. Acorn Hotel, Inc.*, 931 F. Supp.394 (E.D. Pa 1996), *aff'd*, 162 F.3d 1150 ...........6

*Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548 (3d Cir. 1985) ...........................6

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................6

*Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001) ......................................................................7

*Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000)....................5

*General State Authority v. Coleman Cable & Wire Co.*, 27 Pa. Cmmw. 385, 365
    A.2d 1347 (1976) ...................................................................................................8

*Grim v. Thomas Iron Co.*, 115 Pa. 611, 8 A. 595 (1887)....................................................6

*Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989 (3d Cir.1987) ........................8

*Jewelcor Jewelers & Distributors, Inc. v. Correctional*, 373 Pa. Super. 536, 542
    A.2d 72 (1988)......................................................................................................7

*Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 777 A.2d 418
    (2001).....................................................................................................................7

*South Side Trust Co. v. Washington T. P. Co.*, 252 Pa. 237, 97 A. 450 (1916)................12

*Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*,
    535 Pa. 469, 636 A.2d 156 (1994) ......................................................................8, 10

*Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616 (Pa. Super. Ct. 1999), *app.
    denied*, 561 Pa. 700, 751 A.2d 193 (2000) ..................................................................7

## STATE CASES

*Cardamone v. University of Pittsburgh*, 253 Pa. Super. 65, 384 A.2d 1228 (1978) ...........8

*Lehigh Valley Hospital v. County of Montgomery*, 768 A.2d 1197 (Pa.
    Cmmw.,2001) .......................................................................................................8

## OTHER AUTHORITIES

1 Pennsylvania Law Encyclopedia *Accounts and Accounting* §§ 2-6 (1986) ..................12

MEI\5298017.2

## I.    PRELIMINARY STATEMENT

This action arises from a written agreement between Plaintiff and Counterclaim

Defendant Pellegrino Food Products, Inc. ("Pellegrino") and Defendant and Counterclaim

Plaintiff Rheon U.S.A. ("Rheon") regarding Pellegrino's purchase of three Rheon KN400

Cornucopia encrusting machines (the "Machines") from Rheon.  Pellegrino has used and

continues to possess the Machines, but refuses to pay for them, and has instead sued Rheon for a

declaratory judgment, breach of contract and breach of warranty.[1]  Rheon has filed

Counterclaims against Pellegrino under numerous theories including breach of contract and

fraud.  Rheon has also, however, filed Counterclaims to impose liability for the price of the

Machines upon Counterclaim Defendant California First Leasing Corporation ("CalFirst"), the

leasing company from whom Pellegrino attempted – but failed – to obtain lease financing for its

purchase of the Machines.

Rheon's Counterclaims against CalFirst assert causes of action for breach of contract,

unjust enrichment, promissory estoppel, and "Account Stated."  Even assuming the truth of all of

Rheon's allegations in its "Answer, Affirmative Defenses and Counterclaim,"[2] Rheon has failed

to state a single claim against CalFirst.

Thus, Rheon's Count VIII for "Breach of Contract," premised upon its purported status

as a third-party beneficiary to the alleged lease agreement between CalFirst and Pellegrino, fails

because Rheon admits that both CalFirst and Pellegrino disavowed that any agreement existed

---

[1]    Among other things, Pellegrino alleges that any purchase of the Machines was contingent upon Pellegrino's obtaining financing, and that, since it did not obtain financing, it should have no obligation to pay for the Machines.  In addition, Pellegrino alleges that the Machines did not perform as represented by Rheon and that Pellegrino suffered damages as a result.

[2]    Rheon filed a single pleading entitled "Answer, Affirmative Defenses and Counterclaim Pursuant to Federal Rule of Civil Procedure 13."  Throughout this Motion, CalFirst separately refers to Rheon's "Answer," "Affirmative Defenses" and "Counterclaim," for ease of finding the references, even though they are all in the same document.

MEI\5298017.2

between the two parties. (*See* Counterclaim, ¶¶ 66, 69 & 79) Since a third-party beneficiary's rights turn on the intent of the contracting parties, and since it is undisputed that the purported contracting parties deny the existence of any contract, Rheon's breach of contract claim should be dismissed.

Rheon's Count IX for "Unjust Enrichment" fails because the Counterclaim is utterly devoid of any allegation as to how CalFirst has been unjustly enriched by Rheon. It is undisputed that CalFirst and Pellegrino each withdrew any offer to enter into a lease transaction, and that CalFirst refunded the deposit made by Pellegrino. (*See* Counterclaim, ¶ 66 & Exh. "H" thereto) Rheon does not plead that CalFirst received any benefit because CalFirst clearly did not.

Rheon's Count X for "Promissory Estoppel" fails because Rheon admits that it looked to Pellegrino for payment, that Pellegrino promised to pay for the Machines if it could not obtain financing, and that CalFirst never indicated it was purchasing the Machines. Most importantly, Rheon admits that the issue of financing was in any event "a non-essential term that governed only the timing of delivery of the machines." (Affirmative Defenses at ¶ 16) Rheon manifestly did not rely upon any purported promise by CalFirst in deciding to deliver the Machines to Pellegrino. Rheon's damage results from Pellegrino's refusal to pay for the Machines – not from the timing of Rheon's delivery to Pellegrino.

Rheon's Count XI for "Account Stated" fails because this common law cause of action only arises where the debtor has an open account with the creditor, and where the details concerning the transaction(s) forming the basis for the debt are undisputed. Clearly, that is not the case here.

Accordingly, the instant Motion to Dismiss should be granted in its entirety.

4

## II.    FACTS AS ALLEGED BY RHEON

Rheon alleges the facts to be as follows:

In early January 2005, Rheon became aware that Pellegrino was interested in the purchase of the Machines from Rheon. (Counterclaim at ¶ 18) Mr. Pellegrino advised Rheon that Pellegrino had entered into a substantial contract with one of its customers, Wal-Mart, to create certain products to be sold in conjunction with "March Madness," but did not have the capacity to complete the order. (*Id.* at ¶¶ 19-20) As such, Pellegrino immediately needed the Machines. (*Id.* at ¶ 21)

On January 18, 2005, Pellegrino and Rheon entered into a written agreement for the sale of the Machines to Pellegrino. (Counterclaim at ¶¶ 22, 24 and Exh. "A" thereto) The parties agreed upon the price of $57,000 per machine. (*Id.* at ¶ 25) Pellegrino made a deposit of $3,000 and agreed that it would either obtain financing through a third party or pay for the Machines with its own funds. (*Id.* at ¶ 27) Rheon agreed to ship the Machines and return the deposit uncashed once the payment method was confirmed. (*Id.* at ¶ 28) Pellegrino specifically represented that it did not really need to obtain financing, but "intended to do so because of the rate to be received." (Answer at ¶ 6) At no point did Pellegrino ever advise Rheon that its purchase of the Machines was contingent upon Pellegrino obtaining financing. (*Ibid.*) During negotiations, Pellegrino represented to Rheon that it needed the Machines immediately and that either CalFirst would finance them or Pellegrino would simply pay for the Machines itself. (Affirmative Defenses at ¶ 18)

On January 14, 2005, CalFirst sent a financing proposal (the "Proposal") to Pellegrino. (Counterclaim at ¶ 31 and Exh. "B" thereto) On January 18, 2005, Mr. Pellegrino signed the Proposal and submitted a deposit. (*Id.* at ¶ 33) The Proposal states prominently that it is an "OFFER ONLY" and that this "offer is subject to the review and acceptance of Lessor's Finance

MEI\S298017.2

Committee." (Exh. "B" to Counterclaim)  The Proposal also states on its face that the transaction would be documented on CalFirst's standard lease documentation. (*Id.*)  Under the terms of the Proposal, CalFirst's financing committee had the power to require personal guaranties. (Counterclaim at ¶ 34 and Exh. "B" thereto)

On January 18, 2005, and again on January 19, 2005, Rheon allegedly advised both Pellegrino and CalFirst that it would not ship the Machines unless it obtained either (1) payment in full from either Pellegrino or CalFirst; or (2) a purchase order or directive from CalFirst to ship the Machines to Pellegrino. (Counterclaim at ¶ 37)

On January 19, 2005, Rah-miel Mitchell ("Mitchell"), a CalFirst Account Executive, faxed a copy of the signed Proposal to Rheon, with a note on the fax cover to "go ahead and start shipping" the Machines to Pellegrino. (Counterclaim at ¶ 38 and Exh. "C" thereto)

Rheon shipped the Machines on January 19, 2005, allegedly based on CalFirst's fax. (Counterclaim at ¶ 39)  However, Rheon specifically denies that CalFirst was the purchaser of the Machines or that CalFirst ever indicated that it was the purchaser of the Machines. (Answer at ¶ 9)

Rheon submitted an invoice dated January 19, 2005 to CalFirst, stating that the Machines had been shipped to Pellegrino and that payment in the amount of $171,000 was due and owing. (*Id.* at ¶ 40 and Exh. "D" thereto)  A Rheon technician installed the Machines at Pellegrino's Warren facility starting on or about January 28, 2005, and concluding on or about February 1, 2005. (*Id.* at ¶ 41)

The proposed financing transaction between CalFirst and Pellegrino was not consummated due to Pellegrino's refusal to provide personal guaranties. (Counterclaim at ¶¶ 55 through 59)  On or about March 23, 2005, CalFirst refunded the $7,549.65 payment that Pellegrino had submitted as a deposit. (Counterclaim at ¶ 66 and Exh. "H" thereto)

MEI\5298017.2

On or about April 13, 2005, CalFirst wrote Thomas Pellegrino a letter confirming that CalFirst did not accept Pellegrino's offer for lease financing on the Machines, that CalFirst did not place an order for the Machines and had no obligation to Rheon, and that Pellegrino's deposit had been refunded. (Counterclaim at ¶ 69 and Exh. "H" thereto)

In early April 2005, Rheon contacted Mr. Pellegrino to explain that Rheon still had not been paid for the Machines. (Counterclaim at ¶ 73) Mr. Pellegrino feigned surprise that Rheon had not been paid by CalFirst and said that he would immediately contact CalFirst to determine why payment had not yet been made. (*Id.* at ¶ 74)

By letter dated May 2, 2005, Thomas Pellegrino formally withdrew any offer for lease financing. (Counterclaim at ¶ 79 and Exh. "I" thereto)

Pellegrino has not paid for or returned any of the Machines or test parts provided by Rheon. (Counterclaim at ¶ 81)

## III.    LEGAL ARGUMENT

### A.    Legal Standards For a Motion to Dismiss Pursuant to FRCP 12(b)(6)

A motion to dismiss pursuant to Rule 12(b) (6) tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may grant the motion if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief. *Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173, 183 (3d Cir. 2000). Accordingly, a federal court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001).

In considering a motion to dismiss for failure to state a claim, the court must primarily consider the allegations in complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to complaint may also be taken into account. *Bryan v. Acorn Hotel, Inc.*, 931 F. Supp. 394 (E.D. Pa 1996), *aff'd*, 162 F.3d 1150.

In diversity cases, federal courts must apply state substantive law.[3] *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 552 (3d Cir. 1985).

### B.    Rheon Fails to State a Claim for Breach of Contract Because It Admits that Both Purported Contracting Parties Deny the Existence of a Contract.

Rheon attempts to assert a breach of contract claim against CalFirst based on Rheon's purported status as a third-party beneficiary to the lease agreement between Pellegrino and CalFirst. Rheon's claim fails because it pleads and admits that there is no contract between CalFirst and Pellegrino.

Under Pennsylvania law, the following four elements must be established to state a claim for breach of contract: (1) existence of a contract between the contracting parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract; and (4) that damages resulted from the breach. *See General State Authority v. Coleman Cable & Wire Co.*, 27 Pa. Cmmw. 385, 365 A.2d 1347, 1349 (1976). Third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract, and the third party beneficiary cannot recover except under the terms and conditions of the contract from which he makes a claim. *Grim v. Thomas Iron Co.*, 115 Pa. 611, 8 A. 595 (1887). "[T]he rights of an alleged third party beneficiary may arise [*sic*] no higher than the rights of the parties to the contract and ... they are vulnerable to the same limitations which may be asserted between the promisor and the

---

[3]    For reasons that are discussed in greater detail in CalFirst's concurrently filed Motion for Change of Venue, CalFirst contends that California law should be applied to contract claims under certain circumstances in this case. By citing Pennsylvania law in this brief, CalFirst is not waiving its arguments in this regard.

promisee." *Jewelcor Jewelers & Distributors, Inc. v. Corr*, 373 Pa. Super. 536, 553, 542 A.2d 72, 80 (1988.

Thus, Rheon cannot recover as a third-party beneficiary to an agreement between Pellegrino and CalFirst unless Rheon can first establish the existence of such an agreement and the terms and conditions thereof. Whether an agreement exists turns upon the intent of the contracting parties – not the intent of the purported third-party beneficiary. *See Murphy v. Duquesne University Of The Holy Ghost,* 565 Pa. 571, 591, 777 A.2d 418, 429 (2001) (fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties).

Here, both of the purported contracting parties deny that any agreement exists between them. Rheon admits in its Counterclaim that (a) CalFirst refunded Pellegrino's deposit and took the position that no financing agreement existed (Counterclaim at ¶¶ 66 and 69 and Exh. "H" thereto); and (b) Pellegrino likewise disavowed any contract with CalFirst (*id.* at ¶ 79 and Exh. "I" thereto). Under these circumstances, there is no contract under which Rheon can claim rights as a third-party beneficiary, and no basis for a breach of contract claim by Rheon against CalFirst.

Count VII for "Breach of Contract" should be dismissed.

### C.    Rheon's "Unjust Enrichment" Claim Fails Because It Has Not Pled That CalFirst Was Unjustly Enriched.

The elements of a claim for unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999), *app. denied*, 561 Pa. 700, 751 A.2d 193 (2000).

MEI\5298017.2

Rheon's "unjust enrichment" claim against CalFirst utterly fails to state any benefit CalFirst accepted from Rheon and retained without payment to Rheon. It is undisputed that Pellegrino has withdrawn any offer to finance its purchase of the Machines through CalFirst, and that CalFirst has refunded the deposit paid by Pellegrino. The touchstone of an unjust enrichment claim is that the party against whom recovery is sought must have wrongfully received a benefit that would be unconscionable to retain. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989 (3d Cir.1987). The Counterclaim does not even allege that CalFirst received or retained any benefit, let alone any benefit conferred by Rheon.

As such, Rheon's Count IX for "Unjust Enrichment" should be dismissed.

**D.      Rheon's "Promissory Estoppel" Claim Should Be Dismissed Because Rheon Admits That CalFirst Never Promised to Pay and That Financing Was a Non-essential Term Governing Only The Timing of Its Shipment to Pellegrino.**

The doctrine of promissory estoppel allows courts to enforce promises unsupported by consideration in order to remedy a manifest injustice. *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.,* 535 Pa. 469, 636 A. 2d 156 (1994); *Cardamone v. University of Pittsburgh,* 253 Pa. Super. 65, 74, 384 A.2d 1228, 1233 (1978). The plaintiff must plead existence of a promise that: (1) the promisor should reasonably expect to induce a definite action or forbearance on the part of the promisee; (2) actually induces such action or forbearance; and (3) injustice can be avoided only by its enforcement. *Thatcher's Drug Store,* 535 Pa. at 476, 636 A. 2d at 161. There must be "unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel," and "no duty on the party seeking to assert estoppel." *Lehigh Valley Hospital v. County of Montgomery* 768 A.2d 1197, 1200 (Pa. Cmmw., 2001); see also *Thatcher's Drug Store,* 535 Pa. at 477; 636 A. 2d at 160 (reversing grant of injunctive relief where "reliance was unreasonable; nothing was done to

10                                                          MEI\5298017.2

formalize the promise; and no evidentiary, cautionary or deterrent functions were met under the circumstances").

Through its "promissory estoppel" claim, Rheon seeks to hold CalFirst liable for the price of the Machines under the Agreement with Pellegrino, based on the allegation that it would not have shipped the Machines to Pellegrino in the absence of the purported directive from CalFirst. Rheon's claim should be dismissed because it fails to state facts sufficient to establish even one of the requisite elements.

*First*, Rheon's claim for payment is not supported by any alleged promise to purchase the Machines. Indeed, Rheon admits that CalFirst never promised to purchase the Machines. Rheon makes the following allegations:

> It is specifically denied that CalFirst sent a release letter to Rheon indicating that CalFirst was the purchaser of the machines and was leasing the machines to Pellegrino....At no point did CalFirst indicate that it was the purchaser of the machines. (Answer at ¶ 9)

> It is specifically denied that Rheon signed any agreement which obligated that CalFirst make payment to Rheon....Pellegrino maintained an obligation to either arrange for 100% financing of the machines or to pay for the machines directly in the event it did not consummate the financing. (Answer at ¶ 10)

Instead, it is undisputed that Rheon and Pellegrino entered into a purchase agreement with respect to the Machines, and Rheon alleges that Pellegrino is the responsible party:

> [Pellegrino and Rheon] entered into a written agreement for the KN400 machines. (Counterclaim at ¶ 24 and Exh. "A" thereto)

> Pellegrino was obligated to pay Rheon for the machines once Pellegrino elected not to consummate the agreement with CalFirst for the financing of the machines. (Answer at ¶ 14)

> Pellegrino has breached its contract with Rheon by failing to pay for the machines or completing its financing of the machines. (Answer at ¶ 15)

MEI\5298017.2

Nor did CalFirst promise to finance Pellegrino's purchase of the Machines. The Proposal, which was forwarded to Rheon and upon which Rheon purportedly relied, states prominently that it is an "OFFER ONLY" and that this "offer is subject to the review and acceptance of Lessor's Finance Committee." (Exh. "B" to Counterclaim) The Proposal also states on its face that the transaction would be documented on CalFirst's standard lease documentation. (*Id.*) Thus, the Proposal, on its face, cannot be reasonably interpreted to comprise a contract between CalFirst and Pellegrino, as Rheon attempts to do.

*Second*, even ignoring the absence of an actionable promise, Rheon's claim fails because it specifically alleges that it did not act in reliance upon any alleged promise by CalFirst. Rheon admits that "[t]he precise financing method was a non-essential term that governed only the timing of delivery of the machines." (Affirmative Defenses at ¶ 16) Rheon's allegations make it clear that Rheon relied upon *Pellegrino's* promise to pay, regardless of whether financing was available:

> Pellegrino made a deposit of $3,000 and agreed that it would either obtain financing through a third party or would pay for the machines with its own funds. (Counterclaim at ¶ 27)

> Pellegrino advised that it immediately needed the machines because it had entered into a contract with a substantial customer that it could not fulfill without the machines. Pellegrino specifically represented that it did not even need to obtain financing from a third party, but intended to do so because of the rate to be received. At no point during the negotiations, or thereafter, did Pellegrino ever advise Rheon that its purchase of the machines was contingent upon Pellegrino obtaining financing. (Answer at ¶ 6)

> Pellegrino was obligated to pay Rheon for the machines once Pellegrino elected not to consummate the agreement with CalFirst for the financing of the machines. (Answer at ¶ 14)

Since the issue of financing was "non-essential" and governed only the issue of timing, Rheon cannot hold CalFirst responsible for the purchase price of the Machines. Rheon admits

MEI\5298017.2

that CalFirst never promised to purchase the Machines. At best, Rheon alleges that CalFirst promised to finance Pellegrino's purchase of the Machines (which CalFirst denies). Thus, Rheon concedes that it did not rely upon CalFirst's alleged promise to finance in deciding to supply the Machines to Pellegrino. Given its admission that the payment method affected only the timing of Rheon's delivery, Rheon's claim boils down to the fact that it delivered earlier than it might have otherwise. Since Rheon admits that it agreed to ship the Machines once the payment method was confirmed (Counterclaim at ¶ 28), and thus that it would have shipped them in any event irrespective of whether Pellegrino obtained financing from CalFirst, it cannot claim that the failure of financing imposed any inequitable or unfair result.[4] It is Pellegrino's continuing refusal to pay for the Machines that has damaged Rheon – not the timing of Rheon's shipment to Pellegrino as a result of CalFirst's purported promise to finance.

*Third and finally,* Rheon's claim fails because enforcement of CalFirst's alleged promise is not the way to avoid injustice. Here, Rheon clearly has a remedy against Pellegrino. Even assuming *arguendo* that Rheon relied upon its belief that CalFirst was going to finance Pellegrino's purchase, requiring CalFirst to finance Rheon's sale of the Machines would create more injustice than it would avoid. Rheon admits that the Proposal allowed CalFirst to require personal guarantees, that Pellegrino repudiated its obligations by refusing to provide personal guarantees, and that Pellegrino disavowed any agreement with CalFirst. The equities would not be served by forcing CalFirst to provide financing under such circumstances (even assuming Pellegrino could be forced to accept such financing).

---

[4] Indeed, under the facts pled by Rheon, such a result would be grossly unfair and inequitable to CalFirst, and would unjustly enrich Rheon at CalFirst's expense. This is especially so in light of the clear and unambiguous terms of the contingencies in the Proposal, which Rheon admits, but upon which Rheon nonetheless claims to have relied.

MEI\5298017.2

For all of these reasons, Rheon's Count X for "Promissory Estoppel" should be dismissed.

**E.    Rheon's "Account Stated" Claim Should Be Dismissed.**

In addition to the reasons stated above, Rheon fails to state a claim for an "Account Stated" for the simple reason that this claim is appropriate only where the debtor has an open account with the creditor, and there is a statement for an undisputed amount. At common law, when parties to an open account agreed to an amount or balance of the transactions between them, the agreement was called a statement of the account and the basis of their financial relationship was called an "account stated." *See generally* 1 Pennsylvania Law Encyclopedia *Accounts and Accounting* §§ 2-6 (1986). As explained in *South Side Trust Co. v. Washington T. P. Co.*, 252 Pa. 237, 242, 97 A. 450, 451 (1916): "[T]he gist of [an account stated] consists in an agreement to, or acquiescence in, the correctness of the account, so that in proving the account stated, it is not necessary to show the nature of the original transaction, or indebtedness, or to set forth the items entering into the account. Where the evidence tending to show the statement of account is not in dispute, the question as to whether the transaction amounts to an account stated is for the determination of the court."

It is inappropriate to assert an "account stated" against CalFirst because the facts alleged in the Counterclaim belie any notion that CalFirst had an "account" with Rheon, had any dealings with Rheon, or acknowledged any transaction with Rheon. Indeed, Rheon specifically acknowledges that CalFirst was never the purchaser of the Machines (Answer at ¶ 9), or that Rheon signed any agreement obligating CalFirst to make payment to Rheon (Answer at ¶ 10).

Since CalFirst was not a customer of Rheon and had no "account" with Rheon, Count XI, "Account Stated," should be dismissed.

MEI\5298017.2

## IV.    CONCLUSION

Counterclaim Defendant California First Leasing Corporation respectfully requests that this Court dismiss each and every claim asserted by Rheon against it (*i.e.*, Counts VIII, IX, X and XI of Rheon's Counterclaim).

Respectfully submitted,

**McCARTER & ENGLISH, LLP**


By:/s/ B. John Pendleton
    B. JOHN PENDLETON, ESQ.
    Attorney I.D. No. 41162
    Lisa S. Bonsall, Esq.
    Attorney I.D. No. 55452
    Four Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102
    Telephone: 973.622.4444
    Fax: 973.624.7070

    Attorneys for California First
    Leasing Corporation

Dated:  October 17, 2005

15

MEI\5298017.2