**EXHIBIT B**



**CalFirst**
California First Leasing Corporation
A Subsidiary of California First National Bancorp

Exhibit B

# LEASE AGREEMENT

18201 Von Karman Avenue, Suite 800 · Irvine, California 92612
Phone 800-496-4640 · 949-255-0500 · Fax 949-255-0501 · www.CalFirstLease.com

ORDER NO. _____

| LESSEE | | | | |
|---|---|---|---|---|
| Pellegrino Food Products, Inc | | | | |
| STREET | CITY | STATE | COUNTY | ZIP |
| 100 Lookout St. | Warren | PA | Warren | 16365-1630 |

1. **AGREEMENT/LEASE:** California First Leasing Corporation ("Lessor") agrees to lease to Lessee the hardware, software and/or other equipment ("Property") described on the Lease Schedule(s) ("Schedule(s)") referencing this Lease Agreement ("Agreement") and Lessee agrees to lease from Lessor the Property subject to the terms set forth herein and on each Schedule(s) that the parties may from time to time enter into with respect to this Agreement. Each Schedule identified as being a part of this Agreement incorporates the terms of this Agreement and constitutes a separate lease agreement and is referred to herein as the "Lease". The Lease is in force and is binding upon Lessee and Lessor upon signed acceptance by Lessor.

2. **UNIFORM COMMERCIAL CODE ACKNOWLEDGMENT:** Lessee acknowledges that it has received and approved any written "Supply Contract" covering the Property purchased from each Supplier for lease and Lessor has informed or advised Lessee, either previously or by this Lease, of the following: (i) the identity of the Supplier; (ii) that Lessee may have rights under the Supply Contract; and (iii) that Lessee may contact the Supplier for a description of any such rights. This Lease is a "Finance Lease". (The terms "Finance Lease", "Supply Contract" and "Supplier" as used in this Lease have the meanings only as ascribed to them under Division 10 of the California Uniform Commercial Code and have no effect on any tax or accounting treatment of the Lease). This provision survives termination and/or expiration of the Lease.

3. **NO WARRANTIES:** LESSOR IS NOT THE SUPPLIER, MANUFACTURER, DEVELOPER, PUBLISHER, DISTRIBUTOR, OR LICENSOR (COLLECTIVELY, "SUPPLIER") OF THE PROPERTY AND MAKES NO EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION AS TO FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, VALUE, MERCHANTABILITY, OR PERFORMANCE OF THE PROPERTY OR THE MATERIAL OR WORKMANSHIP THEREOF OR AGAINST INTERFERENCE BY LICENSORS OR OTHER THIRD PARTIES, IT BEING AGREED THAT THE PROPERTY IS LEASED "AS IS" AND THAT ALL SUCH RISKS ARE TO BE BORNE BY LESSEE. Lessee has selected the Property and represents to Lessor that all the Property is suitable for Lessee's purposes. Lessor assigns to Lessee during the term of the Lease any warranty rights it may have received from the Supplier as a result of Lessor's purchase of the Property. If Lessee has any claims regarding the Property or any other matter arising from Lessee's relationship with the Supplier, Lessee must make them against the Supplier. This provision survives termination and/or expiration of the Lease.

4. **AUTHORIZATION DATE AND LEASE DURATION:** A Schedule commences and rent is due beginning on the date that Lessee certifies in writing to Lessor that all of the Property has been received and accepted by Lessee as installed, tested and ready for use, and Lessee authorizes Lessor in writing to disburse payment to the Supplier ("Authorization Date"). Unless and until Lessee provides such written authorization, Lessor will not disburse payment to Suppliers. The Term of each Schedule is reflected on the Schedule and begins on the first day of the calendar quarter following the Authorization Date. A calendar quarter commences on the first day of January, April, July and October. Lessee has the right to use the Property at the specific locations shown on the Schedule throughout the duration of this Lease in accordance with the provisions of this Lease. The Term extends for an additional six month period ("Extension Term") at the rental rate delineated on the Schedule unless Lessee provides to Lessor written notice of Lessee's election not to extend the Term at least one hundred twenty days prior to the expiration of the Term.

5. **RENTALS:** The rent payable is shown on the Schedule(s). The monthly rent is due to Lessor, in advance, for each month or portion of a month beginning on the Authorization Date and continuing for each month that this Lease is in effect. Rent for portions of a month are based on a daily rental equal to one-thirtieth of the monthly rent. ALL RENTS SHALL BE PAID WITHOUT NOTICE OR DEMAND AND WITHOUT ABATEMENT, DEDUCTION OR SETOFF OF ANY AMOUNT WHATSOEVER. THE OPERATION AND USE OF THE PROPERTY IS SOLELY AT THE RISK OF LESSEE AND THE OBLIGATION OF LESSEE TO PAY RENT UNDER THE LEASE SHALL BE ABSOLUTE AND UNCONDITIONAL. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES THE FOLLOWING RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY LAW: (I) RIGHT TO CANCEL OR TERMINATE THIS LEASE PRIOR TO EXPIRATION OF THE APPLICABLE TERM, (II) RIGHT TO REJECT THE PROPERTY, (III) RIGHT TO REVOKE ACCEPTANCE OF THE PROPERTY, (IV) RIGHT TO RECOVER DAMAGES FROM LESSOR FOR ANY BREACH OF WARRANTY, AND (V) RIGHT TO RECOVER ANY CONSEQUENTIAL DAMAGES WHATSOEVER.

Rents will be paid to Lessor unless otherwise instructed in writing by Lessor and its assignee.

* * * * * * * * * * * * * * * * * *

THIS LEASE AGREEMENT AND THE APPLICABLE SCHEDULE(S) CONTAIN THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE SUBJECT MATTER HEREOF. THE LEASE CAN ONLY BE MODIFIED IN WRITING, WITH SUCH MODIFICATIONS SIGNED BY A PERSON AUTHORIZED TO SIGN AGREEMENTS ON BEHALF OF LESSEE AND BY AN AUTHORIZED SIGNER OF LESSOR. NO ORAL OR OTHER WRITTEN AGREEMENTS, REPRESENTATIONS OR PROMISES SHALL BE RELIED UPON BY, OR BE BINDING ON, THE PARTIES UNLESS MADE A PART OF THIS LEASE BY A WRITTEN MODIFICATION SIGNED BY AN AUTHORIZED SIGNER OF LESSEE AND LESSOR.

LESSEE: _/s/ Thomas M. Pelly_ (Signature)

CALIFORNIA FIRST LEASING CORPORATION _____ (Signature)

This Lease is subject to acceptance by Lessor's Finance Committee. By signing below, the signer certifies that he or she has read this Lease Agreement, INCLUDING THE REVERSE SIDE, has had an opportunity to discuss its terms with Lessor, and is authorized to sign on behalf of Lessee. Until this Lease has been signed by an authorized signer of Lessor, it will constitute a firm offer by Lessee.

| | LESSEE/OFFEROR | | LESSOR |
|---|---|---|---|
| OFFER: | Pellegrino Food Products, Inc | ACCEPTANCE: | California First Leasing Corporation |
| Signature: | _/s/ Tom Pellegrino_ | Signature: | |
| Name: | Tom Pellegrino | Name: | |
| Title: | Pres. | Title: | |
| Date: | 1-19-05 | Date: | |

mq-cal.doc Rev. 03/02

6. **INDEMNITY:** Lessee assumes liability for, and agrees at its own expense to indemnify and defend Lessor, its employees, officers, directors and assigns, from and against any and all claims, liabilities, losses, damages, and expenses (including legal expenses) of every kind or nature (including, without limitation, claims based upon strict liability) arising out of the use, condition (including latent and other defects, whether or not discoverable by Lessee or Lessor), operation or ownership of any items of Property (including, without limitation, any claim for patent, trademark or copyright infringement) or for any interruptions of service, loss of business or consequential damages. These indemnities and assumptions survive the expiration and/or termination of this Lease.

7. **PERFORMANCE OF LESSEE'S OBLIGATIONS BY LESSOR:** If Lessee fails to perform any of its obligations under this Lease, Lessee agrees that Lessor may, at its option, perform them for Lessee without waiving Lessee's default. Any amount paid by Lessor, and any expense (including reasonable attorney's fees) or any other liability incurred by Lessor as a result of its performance of any of Lessee's obligations will be payable by Lessee to Lessor upon demand.

8. **FURTHER ASSURANCES AND NOTICES:** Lessee's signing of this Lease constitutes a firm offer. In consideration of Lessor's time and effort in reviewing and acting on the offer, Lessee agrees that its offer is irrevocable for 20 business days after Lessor's receipt of the offer and of all credit information reasonably requested by Lessor. Lessor's signing of the Lease, including the Schedule, constitutes acceptance of Lessee's offer. Lessee agrees to sign and provide any documents which Lessor deems necessary for confirmation, assignment and assurance of performance by Lessee of its obligations under the Lease or for perfection of this Lease and the Property. Lessee authorizes Lessor to sign on Lessee's behalf and/or to file any documents necessary for the perfection of Lessor's interest in the Lease and Property including, but not limited to, Uniform Commercial Code Financing Statements. Lessee authorizes Lessor to insert applicable dates as necessary to complete all documentation for the Lease. Prior to Lessor's acceptance of the Lease and for the duration of the Lease, Lessee agrees to promptly provide Lessor with all credit information reasonably requested by Lessor including, but not limited to, comparative audited financial statements for the most current annual and interim reporting periods. Lessee's failure to provide such information to Lessor is an event of default under the Lease. Lessee shall notify Lessor at least 30 days prior to Lessee changing its name, organizational structure, state of incorporation/formation or location of its chief executive office. All notices to Lessor must be in writing and sent certified mail return receipt requested or through a reputable overnight delivery service to the address shown above or such other address as to which Lessee has been notified in writing.

9. **DEFAULT:** If rent or any other amount is not paid within ten days of its due date, Lessee agrees to pay a late charge equal to five percent (5%) of the unpaid amount. Each month thereafter, past due amounts remaining unpaid hereunder shall bear interest at the lesser of one and one half percent (1 1/2%) per month, compounded monthly or the maximum rate allowed by law. An Event of Default shall occur if: (a) Lessee fails to pay any rent or other payment under the Lease when due and the failure continues for ten days; (b) Lessee fails to perform or observe any of the covenants or obligations in this Lease other than Lessee's rental obligations, and such failure is not cured within ten days after written notice has been provided; (c) Lessee makes an assignment for the benefit of its creditors, files any petition or takes any action under any bankruptcy, reorganization or insolvency laws; (d) an involuntary petition is filed under any bankruptcy statute against Lessee or any receiver, trustee or custodian is appointed to take possession of Lessee's properties, unless such petition or appointment is set aside or withdrawn within sixty days of said filing or appointment; (e) Lessee attempts to or does remove, transfer, sell, sublicense, encumber, part with possession, or sublet any of the Property; (f) Lessee attempts to assign or transfer this Lease or its interest under the Lease or moves any of the Property from the location(s) set forth on the Schedule without Lessor's prior written consent; (g) Lessee undergoes a sale, buyout, change in control, or change in ownership of any type, form or manner, as judged solely by Lessor; or (h) Lessee's credit worthiness materially deteriorates, as judged solely by Lessor.

10. **REMEDIES:** Upon an Event of Default, Lessor may exercise at its sole option any one or more of the remedies permitted by law, including but not limited to the following: (a) through legal action, enforce performance by Lessee of the applicable covenants and obligations of this Lease or recover damages for the breach of those covenants or obligations; (b) terminate the Lease and Lessee's rights under this Lease; (c) by notice in writing to Lessee (unless the giving of such notice is prohibited by law or court order), recover all amounts due on or before the date Lessor declared this Lease to be in default, plus, as liquidated damages for the loss of a bargain and not as a penalty, accelerate and declare to be immediately due and payable all rentals and other sums payable under the Lease without any presentment, demand, protest or further notice (all of which are hereby expressly waived by Lessee), at which time the same shall become immediately due and payable; and (d) take immediate possession of the Property, or any part of the Property, from Lessee free from claims by Lessee. In the case of Software, it is agreed that Lessee's unauthorized use, disclosure, or transfer of the Software will cause Lessor significant damages which, at the time the parties enter the Lease, are impossible to quantify or predict. Therefore, if Lessee is found to be using (in any manner) all or any portion of the Software after the termination of this Lease, or if Supplier terminates a license of Lessee's right to use the Software for an alleged breach of the use, disclosure, or transfer restrictions imposed on Lessee, the parties hereby agree that liquidated damages shall be payable immediately by Lessee to Lessor in an amount which is equal to two times the amount paid by Lessor for the Software. The exercise of any of the foregoing remedies by Lessor will not constitute a termination of this Lease unless Lessor so notifies Lessee in writing. If Lessor repossesses the Property, Lessor may rent or sell the Property in such a manner and at such times as Lessor may determine and without notice to Lessee. In the event Lessor rents the Property to a third party, any rentals received by Lessor for the remaining Term(s) of the Schedule shall be applied to the payment of: (i) all costs and expenses (including reasonable attorney's fees) incurred by Lessor in enforcing its remedies under this Lease, and (ii) the rentals for the remainder of the Term(s) and all other sums then remaining unpaid under this Lease. All rentals received by Lessor for the period commencing after the ending Term(s) shall be retained by Lessor. Lessee will remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clauses (i) and (ii) above exceed the aggregate rentals received by Lessor under such agreements for the remaining Term(s) applicable to the Property covered by such agreements. In the event that Lessor sells the Property, the proceeds will be applied to the sum of: (1) all costs and expenses (including reasonable attorney's fees) incurred by Lessor in enforcing its remedies under this Lease and in disposing of the Property, (2) the rentals accrued under this Lease, but unpaid up to the time of such disposition, (3) any and all other sums other than rentals then owing to Lessor by Lessee under the Lease, and (4) the stipulated value as would be determined in the event of a Casualty Occurrence (as defined in the terms of the Schedule) on the date of the Property's disposition. The remaining balance of such proceeds, if any, will be applied first to reimburse Lessee for any sums previously paid by Lessee as liquidated damages (as set forth in (c) above), and any remaining amounts will be retained by Lessor. Lessee will remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clauses (1) through (4) above exceeds the proceeds received by Lessor in connection with the disposition of the Property. Lessor's remedies under this Lease shall not be deemed exclusive. Waiver of any default or breach of this Lease shall not be construed as a waiver of subsequent or continuing defaults or breaches.

11. **DISPUTE RESOLUTION:** THE PARTIES AGREE THAT ALL DISPUTES, WHETHER BASED IN TORT OR CONTRACT, RELATING TO OR ARISING OUT OF THIS LEASE (COLLECTIVELY, "LEASE DISPUTES") WILL BE SUBMITTED TO THE ORANGE COUNTY, CALIFORNIA OFFICE OF JAMS L.L.C. ("JAMS") FOR A DETERMINATION OF ALL ISSUES OF LAW AND FACT CONDUCTED BY A RETIRED JUDGE OR JUSTICE FROM THE PANEL OF JAMS, APPOINTED PURSUANT TO A GENERAL REFERENCE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638(a) (OR ANY AMENDMENT, ADDITION OR SUCCESSOR SECTION THERETO) UNLESS LESSOR OR ITS ASSIGNEE SELECTS AN ALTERNATIVE FORUM. IF THE PARTIES ARE UNABLE TO AGREE ON A MEMBER OF THE JAMS PANEL, THEN ONE SHALL BE APPOINTED BY THE PRESIDING JUDGE OF THE CALIFORNIA SUPERIOR COURT FOR THE COUNTY OF ORANGE. IN THE EVENT THAT JAMS IN THE COUNTY OF ORANGE CEASES TO EXIST, THEN THE PARTIES AGREE THAT ALL LEASE DISPUTES WILL BE FILED AND CONDUCTED IN THE CALIFORNIA SUPERIOR COURT FOR THE COUNTY OF ORANGE, UNLESS LESSOR OR ITS ASSIGNEE SELECTS AN ALTERNATIVE FORUM. LESSEE AGREES TO SUBMIT TO THE PERSONAL JURISDICTION OF THE CALIFORNIA SUPERIOR COURT FOR ALL LEASE DISPUTES. LESSEE KNOWINGLY AND VOLUNTARILY WAIVES ITS RIGHTS TO A JURY TRIAL IN ANY ACTION ARISING OUT OF OR RELATING TO THIS LEASE. If any party to this Lease brings any action to enforce any of the terms, or to recover for any breach, then the prevailing party is entitled to recover from the other party reasonable attorney's fees and costs, including all court and JAMS-related costs and costs of collection (including judgment enforcement and collection costs). The parties agree that the provisions of this section shall be binding on their respective agents, successors and assigns.

12. **MISCELLANEOUS:** All agreements, representations, warranties and waivers contained in this Lease, or in any document or certificate delivered pursuant to or in connection with this Lease, shall expressly survive the termination and/or expiration of this Lease. If any provision of this Lease is determined by competent authority to be unenforceable, such determination shall not invalidate the remaining provisions of the Lease. To the extent permitted by applicable law, Lessee waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect. This Lease has been entered into and shall be performed in California and, therefore, THIS LEASE SHALL BE CONSTRUED IN ACCORDANCE WITH AND SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA (EXCLUSIVE OF PRINCIPLES OF CONFLICT OF LAWS). Time is of the essence of this Lease and each provision thereof.

mq-cal.doc Rev. 03/02



**CalFirst**
California First Leasing Corporation
A Subsidiary of California First National Bancorp

18201 Von Karman Avenue, Suite 800 • Irvine, California 92612
Phone 800-496-4640 • 949-255-0500 • Fax 949-255-0501 • www.CalFirstLease.com

# LEASE SCHEDULE

NO. _____

| LESSEE | CONTACT |
|---|---|
| Pellegrino Food Products, Inc | Tom Pellegrino |
| **STREET** | **PHONE NO.** |
| 100 Lookout St. | 814-723-3402 |

| CITY | STATE | COUNTY | ZIP | FACSIMILE NO. |
|---|---|---|---|---|
| Warren | PA | Warren | 16365-1630 | 814-723-3819 |

A. This Schedule is issued with respect to the Lease Agreement Order No. _____ dated _____ (the "Agreement"). All of the terms of the Agreement are incorporated into this Schedule as if fully reflected on the Schedule. The terms of this Schedule and the Agreement combine to form an individual Lease with an independent Term.

B. Any Deposit under this Schedule shall be returned to Lessee (without interest thereon) if Lessor does not accept this Schedule. Unless otherwise specified herein, upon acceptance of this Lease by Lessor any such Deposit shall be applied to the rent due in the last month of the Term provided that all other outstanding payment obligations have been fully satisfied.

C. Term (months)  : Twenty-Four (24)

D. Deposit        : $7,549.65

E. Monthly Rent   : $7,549.65

F. Property       : TOTAL PROPERTY COST: $171,000.00

PROPERTY TO CONSIST OF <u>PACKAGING & LABELING EQUIPMENT</u> AS MORE FULLY DESCRIBED ON EXHIBIT "A" TO RELATED DOCUMENTS AT A LATER DATE.

THE MONTHLY LEASE RATE FACTOR OF <u>0.04415</u> MAY BE ADJUSTED UPWARD BY (.000044) FOR EVERY TEN (10) BASIS POINT ADJUSTMENT IN THE CORRESPONDING AVERAGE YIELD OF EQUALLY MATURING U.S. TREASURY NOTES. THE FINAL MONTHLY LEASE RATE FACTOR SHALL BE FIXED AT THE AUTHORIZATION DATE AND SHALL REMAIN CONSTANT THROUGHOUT THE TERM OF THE LEASE. THE INITIAL INDEX RATE SHALL BE <u>3.12%</u>.

G. AT THE EXPIRATION OF THE TERM AND AFTER THE FINAL RENTAL PAYMENT HAS BEEN PAID BY LESSEE, PLUS ALL ACCRUED BUT UNPAID LATE CHARGES, INTEREST, TAXES, PENALTIES AND/OR ANY OTHER SUMS DUE AND OWING UNDER THE LEASE, AND NO EVENT OF DEFAULT, AS THE SAME IS MORE FULLY DESCRIBED IN THE AGREEMENT HAS OCCURRED OR IS CONTINUING, ONE FINAL PAYMENT OF ONE U.S. DOLLAR ($1.00) SHALL BECOME DUE, OWING AND PAYABLE BY LESSEE TO LESSOR, FOR WHICH LESSOR WILL PASS ITS TITLE IN THE PROPERTY TO THE LESSEE.

THE INDIVIDUAL SIGNING BELOW CERTIFIES THAT HE OR SHE HAS READ THIS SCHEDULE (INCLUDING THE TERMS ON THE REVERSE SIDE HEREOF) AND THE LEASE AGREEMENT, AND IS AUTHORIZED TO SIGN THIS SCHEDULE ON BEHALF OF LESSEE.

THIS SCHEDULE ALONG WITH THE AGREEMENT CONTAIN THE ENTIRE AGREEMENT BETWEEN LESSOR AND LESSEE WITH RESPECT TO THE SUBJECT MATTER HEREOF. THIS AGREEMENT CAN ONLY BE MODIFIED IN WRITING, WITH SUCH MODIFICATIONS SIGNED BY A PERSON AUTHORIZED TO SIGN AGREEMENTS ON BEHALF OF LESSEE AND BY AN AUTHORIZED SIGNER OF LESSOR. NO ORAL OR OTHER WRITTEN AGREEMENTS, REPRESENTATIONS OR PROMISES SHALL BE RELIED UPON OR BE BINDING ON THE PARTIES UNLESS MADE A PART OF THIS LEASE BY A WRITTEN MODIFICATION SIGNED BY AN AUTHORIZED SIGNER OF BOTH LESSEE AND LESSOR.

| **Lessee/Offeror** | **Lessor** |
|---|---|
| OFFER: Pellegrino Food Products, Inc | ACCEPTANCE: California First Leasing Corporation |
| Signature: *Tom Pellegrino* (signed) | Signature: _____ |
| Name: Tom Pellegrino | Name: _____ |
| Title: Pres. | Title: _____ |
| Date: 1-19-05 | Date: _____ |

g-cal.doc Rev. 03/02

**TERMS AND CONDITIONS**
**APPLICABLE TO THIS LEASE SCHEDULE**

H. RIGHT TO INSPECT THE PROPERTY: Lessor may during reasonable business hours enter upon any premises where the Property is located to confirm compliance with the terms of the Lease.

I. TAXES ON THE PROPERTY: All fees, assessments and taxes (except those based upon the income of Lessor) which may now or hereafter become due or are imposed upon the ownership, sale, possession, lease and/or use of the Property are to be paid by Lessee. Lessee's obligations in this regard shall survive termination and/or expiration of this Lease. While Lessee will be responsible for payment of all personal property taxes, Lessor will file all required personal property tax returns. Lessor is not responsible for contesting any valuation of, or tax imposed on, the Property (but may do so strictly as an accommodation to Lessee) and will not be liable or accountable to Lessee therefor. Lessor retains any and all federal and state tax credits or benefits relating to the Property.

J. USE, OPERATION AND MAINTENANCE OF THE PROPERTY: Lessee at its own expense, will provide a suitable place for the operation of the Property. The Property shall at all times be located within the United States. Lessee shall maintain the Property in good working order and in its original condition, ordinary wear and tear excepted. Lessee shall keep in force for the duration of the Lease the best standard Supplier's maintenance agreement(s) which will cause the Supplier(s) to make all the necessary repairs, and replacements in accordance with such maintenance agreement(s) and entitle Lessee (through Lessor, if necessary) to obtain available enhancements, updates, upgrades and changes.

K. ADDITIONS AND MODIFICATIONS TO THE PROPERTY: All additions and modifications to the Property become a part of the Property and are owned by Lessor. Software, as described on any Schedule(s), includes all updates, revisions, upgrades, new versions, enhancements, modifications, derivative works, maintenance fixes, translations, adaptations, and copies of the foregoing or of the original version of the Software whether obtained from the Supplier, licensor or from any source whatsoever, and references in this Lease to Software will be interpreted as references to any and all of the foregoing. All additions and modifications to the Property must be free and clear of any liens or rights of other parties.

L. INSURING THE PROPERTY: While the Property is in transit and for the duration of the Lease, Lessee at its own expense shall maintain (i) comprehensive public liability insurance (naming Lessor or its assigns as additional insured) for bodily injury and property damage resulting from the maintenance, use or transport of the Property and (ii) property and casualty insurance (naming Lessor and/or its assigns as sole loss payee) covering all risks of loss or damage to the Property from any cause whatsoever including, without limitation, fire and theft. All insurance will be from an insurer(s) and in a form and amount satisfactory to Lessor. Lessee shall deliver to Lessor the original policies or certificates of such insurance (and each renewal or replacement thereof) and evidence of the payment of the premiums for such insurance policies. All policies will provide that no cancellation or material modification of such insurance shall be effective without thirty days prior written notice to Lessor.

M. RISK OF LOSS TO THE PROPERTY: While the Property is in transit and throughout the duration of the Lease and until the Property is returned to Lessor or purchased by Lessee, Lessee assumes all responsibility for loss or damage or other Casualty Occurrence, as defined herein, to the Property and shall hold Lessor harmless. A Casualty Occurrence occurs if, for any reason or by any cause whatsoever, any of the Property is lost, stolen, requisitioned, confiscated, destroyed, disposed of or transferred by Lessee, or irreparably damaged as judged solely by Lessor. In the case of Software, the erasure, inoperability or other incapacity of the Software triggered by a preprogrammed termination or limiting design or routine embedded in the Software is also deemed a Casualty Occurrence. In the event of a Casualty Occurrence as to any Property, Lessee will immediately inform Lessor in writing. On the next succeeding rental payment date, Lessee shall either (i) replace the Property with like-kind Property, title to which shall vest in Lessor free and clear of any liens or rights of other parties, acceptable to Lessor or Lessor's assignee, and continue to pay all rentals without interruption as they come due, or (ii) pay to Lessor all past due rentals and other amounts then due and an amount equal to the stipulated value as determined by the Casualty Schedule annexed to the Lease ("Stipulated Value"). Lessor and Lessee acknowledge and agree that, in the event of a Casualty Occurrence, Lessor's damages would be difficult to determine and, therefore, the Stipulated Values reflected on the Casualty Schedule represent the parties' reasonable and considered attempt to approximate such Casualty Occurrence damages. When Lessee makes the payment to Lessor as provided under option (ii) above, the rentals cease to accrue and the Lease with respect to that Schedule ends. Insurance proceeds received by Lessor as a result of a Casualty Occurrence will be applied to reduce Lessee's obligation to pay the Stipulated Value.

N. OWNERSHIP OF THE PROPERTY: Lessor at all times retains ownership, title and/or control over Lessee's right to use the Property in accordance with the terms of the Lease. Lessee shall protect and defend, at its own expense, Lessor's title and/or rights in the Property against all claims and liens and keep the Property free and clear of all such claims and liens. The Property is and shall remain personal property of Lessor. To the extent Software subject to this Lease may also be the subject of a license agreement between the Supplier and Lessee, Lessee acknowledges that the license to use the Software is being provided to Lessee solely because of payments made by Lessor to the Supplier and, accordingly, Lessee agrees that Lessor has an interest in the license. Lessee agrees that if it or any of its affiliates receives anything of value from the Supplier (including without limitation, a trade-in, substitution, discount or upgrade allowance) other than Lessee's rights to use the Software reflected on the Schedule for the duration of this Lease, Lessee will advise Lessor and pay to Lessor an amount equal to such additional value obtained by Lessee. Lessee agrees that it will not surrender, transfer or modify the license agreement without first obtaining the written consent of Lessor.

O. RETURN OF PROPERTY: If Lessee elects to return the Property as provided for in the Lease, Lessee will discontinue the use of the Property, pay to Lessor an inspection, refurbishment and restocking fee equal to five percent of the Property's original cost, and immediately, at its own expense, ship the Property in its original condition (ordinary wear and tear excepted) to a location within the United States in accordance with the Property return instructions provided by Lessor. In the case of Software, Lessee will destroy all intangible Software items, and deliver to Lessor all tangible items constituting Software. At Lessor's request, Lessee will also certify in a written form acceptable to Lessor that: (i) all the tangible Software has been delivered to Lessor; (ii) all intangible records have been destroyed; (iii) Lessee has not retained the Software in any form; (iv) Lessee will not use the Software after termination and (v) Lessee has not received from Supplier(s) anything of value relating to or in exchange for Lessee's use, rental or possession of the Software during the duration of the Lease (including a trade-in, substitution or upgrade allowance). Until Lessee has complied with all of the requirements of this Section, rent payment obligations will continue from month to month at the rental rate delineated on the Schedule.

P. ASSIGNMENT OF LEASE AND/OR PROPERTY: LESSOR MAY ASSIGN ANY OF ITS RIGHTS IN THE LEASE AND/OR THE PROPERTY TO AN ASSIGNEE ("ASSIGNEE"). LESSEE HEREBY CONSENTS TO SUCH ASSIGNMENT AND AGREES AS FOLLOWS: (1) ASSIGNEE DOES NOT ASSUME ANY OF THE OBLIGATIONS OF LESSOR UNDER THE LEASE; (2) TO PAY ALL ASSIGNED MONIES DUE UNDER THE LEASE UNCONDITIONALLY WITHOUT OFFSET, WHICH MONIES SHALL BE PAYABLE NOTWITHSTANDING ANY DEFENSE OR COUNTERCLAIM WHATSOEVER, WHETHER BY REASON OF BREACH OF THE LEASE, THE EXERCISE OF ANY RIGHT HEREUNDER, OR OTHERWISE, WHICH LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR (LESSEE RESERVES ITS RIGHT TO ASSERT ANY SUCH DEFENSE OR COUNTERCLAIM DIRECTLY AGAINST LESSOR); (3) TO PROVIDE LESSOR WITH A COPY OF ANY NOTICES SENT BY LESSEE TO ASSIGNEE; (4) THAT SUBJECT TO AND WITHOUT IMPAIRMENT OF LESSEE'S LEASEHOLD RIGHTS IN AND TO THE PROPERTY COVERED UNDER THE LEASE, LESSEE SHALL HOLD SAID PROPERTY AND THE POSSESSION THEREOF FOR THE ASSIGNEE TO THE EXTENT OF THE ASSIGNEE'S RIGHTS THEREIN, AND (5) SUCH ASSIGNMENT DOES NOT CHANGE LESSEE'S OBLIGATIONS UNDER THIS LEASE OR INCREASE THE BURDEN AND RISKS IMPOSED ON LESSEE. WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, LESSEE SHALL NOT ASSIGN THIS LEASE OR ITS INTEREST IN OR OBLIGATIONS UNDER THE LEASE IN ANY MANNER INCLUDING, BUT NOT LIMITED TO, AN ASSIGNMENT DUE TO A SALE, MERGER, LIQUIDATION, SUB-LEASE, LEVERAGED BUYOUT, CHANGE OF OWNERSHIP OR CHANGE-IN-CONTROL.