# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

PELLEGRINO FOOD PRODUCTS, INC.  )
      Plaintiff,   ) Case No.:  1:05-CV-00189
          )
  v.        )
          )
RHEON U.S.A.,     )
     Defendant/Counterclaim )
     Plaintiff,   )
          )
  v.        )
          )
PELLEGRINO FOOD PRODUCTS  )
COMPANY, INC., also known as PELLEGRINO )
FOOD PRODUCTS, INC.,   )
          )
    Counterclaim Defendant, )
          )
and        )
          )
CALIFORNIA FIRST LEASING CORPORATION )
          )
    Counterclaim Defendant. )

## COUNTERCLAIM PLAINTIFF RHEON U.S.A.'S BRIEF IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM COUNTS VIII, IX, X & XI PURSUANT TO FED. R. CIV. P. 12(b)(6) FILED BY COUNTERCLAIM DEFENDANT CALIFORNIA FIRST LEASING CORPORATION

Robert J. Tribeck, Esquire
Attorney I.D. No. 74486
Rhoads & Sinon LLP
One South Market Square, 12th Floor
Harrisburg, PA 17108-1146

Attorneys for Defendant, Rheon U.S.A.

Dated:  November 7, 2005

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

COUNTER-STATEMENT OF THE FACTS .................................................................... 2

ARGUMENT ..................................................................................................................... 4

       A.     For Purposes Of Asserting A Breach Of Contract Claim As A Third-Party Beneficiary, Rheon Has Sufficiently Alleged The Existence Of An Agreement Between CalFirst And Pellegrino. ............................... 5

       B.     Rheon's 'Unjust Enrichment' Claim Is Presented As An Alternative Claim To Its Breach Of Contract And Therefore Rheon Is Entitled To Recover The Same Amount Of Damages Under Either Theory, But May Not Recover Under Both Theories. ............................................. 7

       C.     A Viable Claim Of 'Promissory Estoppel' Is Plainly Stated In Rheon's Counterclaim .................................................................................. 9

       D.     The Facts Pled By Rheon Are Sufficient For The 'Account Stated' Claim To Withstand A Motion To Dismiss ......................................... 13

     CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

***FEDERAL CASES***

*Allegheny General Hospital v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000) ...................7

*Cooper v. Broadspire Services, Inc.*, 2005 U.S. Dist. LEXIS 14752 (E.D. Pa. 2005).............5

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .......................................................................4

*Kronmuller v. West End Fire Co.*, 123 F.R.D. 170 (E.D. Pa. 1988) ........................................4

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996) ......................................................................4, 14

*Orelski v. NCS Pearson*, 337 F. Supp. 2d 695 (W.D. Pa. 2004) ..........................................4, 7

*USX Corp. v. Adriatic Insurance Co.*, 99 F. Supp. 2d 593 (W.D. Pa. 2000) ...........................7

***STATE CASES***

*Crouse v. Cyclops Industrial*, 560 Pa. 394, 745 A.2d 606 (2000) ...........................................9

*Leinbach v. Wolle*, 211 Pa. 629, 61 A. 248 (1905)..................................................................13

*McGinn v. Benner*, 180 Pa. 396, 36 A. 925 (1897) .................................................................13

*Robbins v. Weinstein*, 143 Pa. Super. 307, 17 A.2d 629 (Pa. Super. 1941) ...........................13

***FEDERAL RULES***

Fed. R. Civ. P. 12(b)(6) (the "Motion") filed ..................................................................1, 4, 14

***MISCELLANEOUS***

1-18t *Pennsylvania Business Law Encyclopedia (PLE)*, § 512 (Mathew Bender 2004) ........13

## INTRODUCTION

Counterclaim Plaintiff, Rheon U.S.A. ("Rheon"), by and through counsel, Rhoads & Sinon LLP, submits the within Brief in Opposition to the Motion to Dismiss Counterclaim Counts VIII, IX, X & XI pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion") filed by Counterclaim Defendant California First Leasing Corporation ("CalFirst"). The present litigation arises out of the purchase by Plaintiff/Counterclaim Defendant Pellegrino Food Products, Inc. ("Pellegrino"), of three KN400 encrusting machines from Rheon on January 19, 2005, at a total cost of $171,000. To date, neither Pellegrino nor CalFirst, which was Pellegrino's financing partner, has paid for the machines despite the fact that CalFirst authorized Rheon's shipment of the machines to Pellegrino and thereby represented that Rheon would be paid for them.

Through its Motion, CalFirst seeks the dismissal of all claims that have been asserted against it in this litigation and, as a result, seeks to avoid any and all liability, even though there is no question that CalFirst was intimately involved in the events that resulted in the shipment of three Rheon machines to Pellegrino, which have not been paid for or returned. For the reasons articulated below, dismissal of CalFirst from the litigation at the present time would clearly by premature as CalFirst has failed to establish with respect to any of the four Counterclaim Counts asserted by Rheon against CalFirst that Rheon has failed to allege facts, which if proven true, would entitle Rheon to relief. Therefore, Rheon requests that this Court deny CalFirst's Motion in its entirety.

## COUNTER-STATEMENT OF THE FACTS

The facts alleged in Rheon's Counterclaim are incorporated herein by reference as if fully set forth. Those facts, along with inferences drawn from them, must be accepted as true for purposes of the present Motion. Therefore, in the interest of judicial economy, hereunder, Rheon briefly supplements or clarifies the recitation of the facts as presented by CalFirst in support of its Motion. [CalFirst's Memorandum of Law in Support of Motion, pp. 5-7].

In January 2005, contemporaneously with Rheon entering into an agreement with Pellegrino regarding the sale of the Rheon machines, Pellegrino advised that it had been solicited by CalFirst for over one year to obtain financing through CalFirst and that CalFirst had offered such a competitive rate that Pellegrino had to accept the offer. [Counterclaim, ¶29]. In fact, Pellegrino advised that it had already negotiated with CalFirst for the financing of the purchase of the Rheon machines, was approved, and simply needed to finalize the price. [Counterclaim, ¶30].

At the time, Pellegrino was adamant about its immediate need for the Rheon machines. [Counterclaim, ¶36]. Therefore, in the process of executing a financing agreement with CalFirst and advancing the transaction contemplated thereunder, Pellegrino promised or covenanted to CalFirst that Pellegrino would provide personal guarantees if CalFirst so required. [Counterclaim, ¶35].

On January 18, 2005, and again on January 19, 2005, Rheon advised both Pellegrino and CalFirst that it would not ship the machines unless it obtained either (1) payment in full from either Pellegrino or CalFirst; or (2) a purchase order or directive from CalFirst to ship the machines to Pellegrino. [Counterclaim, ¶37]. In response, on January 19, 2005, Rah-miel Mitchell, a CalFirst Account Executive who at all relevant times was acting on behalf of and

subject to the control of CalFirst, with the consent and actual or apparent authority of CalFirst, sent a copy of the executed CalFirst Agreement to Rheon and explicitly instructed Rheon to "go ahead and start shipping" the machines to Pellegrino. [Counterclaim, ¶38 (quoting CalFirst Instruction, attached hereto as Exhibit "A")]. Pursuant to CalFirst's directive, Rheon shipped the machines on January 19, 2005. [Counterclaim, ¶39].

CalFirst and Pellegrino failed to disclose to Rheon that on or about January 27, 2005, at the latest, the financing transaction between CalFirst and Pellegrino was not consummated due to Pellegrino's refusal to provide personal guarantees. [Counterclaim, ¶¶55-59]. Specifically, CalFirst failed to advise Rheon that CalFirst did not believe it was obligated to pay the January 19, 2005, invoice because of Pellegrino's failure to consummate the financing transaction. [Counterclaim, ¶58].

Further, CalFirst and Pellegrino subsequently failed to disclose to Rheon that CalFirst had, by returning Pellegrino's deposit check on March 23, 2005, terminated the CalFirst Financing Agreement to which CalFirst and Pellegrino were parties. [Counterclaim, ¶¶67-68]. Again, CalFirst did not disclose to Rheon that CalFirst did not intend to pay the invoice that was submitted by Rheon upon the January 19, 2005 directives of CalFirst. [Counterclaim, ¶68].

Thereafter, on or about April 13, 2005, CalFirst wrote Thomas Pellegrino a letter taking the position that CalFirst and Pellegrino did not have a valid financing agreement for the Rheon machines. [Counterclaim, ¶69 (referencing April 13, 2005 Letter, attached to Counterclaim as Exhibit "H")]. According to the April 13, 2005 Letter, CalFirst terminated the agreement because Pellegrino refused to provide personal guarantees, even though, under the terms of its agreement with CalFirst, Pellegrino promised or covenanted to provide personal guarantees if CalFirst's financing committee determined them to be necessary. [Counterclaim, ¶70]. At this

point in time, CalFirst and Pellegrino had still failed to disclose to Rheon that the CalFirst Financing Agreement had been terminated. [Counterclaim, ¶¶71-72]. More specifically, CalFirst still had not informed Rheon that CalFirst did not intend to pay the invoice submitted by Rheon in reliance upon the January 19, 2005 directives of CalFirst. [Counterclaim, ¶72]. Not until late April and early May, 2005, was Rheon made aware by Pellegrino, not CalFirst, that Pellegrino had not consummated a financing arrangement with CalFirst and that Pellegrino was disavowing its contract with CalFirst. [Counterclaim, ¶¶78-79].

## ARGUMENT

In considering CalFirst's Motion to Dismiss under Rule 12(b)(6), this Court "must accept as true the factual allegations in the [Counterclaim] and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); FED. R. CIV. P. 12(b)(6). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Orelski v. NCS Pearson*, 337 F. Supp. 2d 695, 698 (W.D. Pa. 2004) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Indeed, CalFirst's Motion must be denied unless Rheon has failed to allege facts, which, if ultimately proven to be true, would entitle it to relief. *Nami*, 82 F.3d at 65; *Kronmuller v. West End Fire Co.*, 123 F.R.D. 170, 173 (E.D. Pa. 1988) (refusing to dismiss 1983 action because "[e]ven if we doubted that plaintiff would ultimately prevail, so long as Plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted").

In the present matter, Rheon has alleged facts which, if established at trial in this matter, would entitle it to relief for one of the claims asserted against CalFirst, namely for breach of contract (Count VIII), or, in the alternative, for unjust enrichment (Count IX), promissory

estoppel (Count X) or account stated (Count XI).  Therefore, the Motion to Dismiss filed on behalf of CalFirst should be dismissed.

> **A.    For Purposes Of Asserting A Breach Of Contract Claim As A Third-Party Beneficiary, Rheon Has Sufficiently Alleged The Existence Of An Agreement Between CalFirst And Pellegrino.**

CalFirst first asks this Court to dismiss Rheon's breach of contract claim (Count VIII). [CalFirst's Memorandum of Law in Support of Motion, pp. 8-9].  In support thereof, CalFirst asserts that "Rheon cannot recover as a third-party beneficiary to an agreement between Pellegrino and CalFirst unless Rheon can first establish the existence of such an agreement . . . ." [CalFirst's Memorandum of Law in Support of Motion, p. 9].  CalFirst maintains that Rheon cannot establish the existence of a contract because Rheon has allegedly "admitted that there is no contract between CalFirst and Pellegrino."  [CalFirst's Memorandum of Law in Support of Motion, p. 8].

The legal proposition underlying CalFirst's argument is clearly correct, namely that in order for a third-party beneficiary to recover on a breach of contract theory, the beneficiary must allege "the existence of a contract."  *Cooper v. Broadspire Servs., Inc.*, 2005 U.S. Dist. LEXIS 14752, *6 (E.D. Pa. 2005).  CalFirst's argument fails, however, in that CalFirst has offered the Court an incomplete portrayal of the allegations made by Rheon with respect to the "existence of a contract" between CalFirst and Pellegrino to which Rheon is a third-party beneficiary.

In its Counterclaim, Rheon alleges in detail that it was a third-party beneficiary to the CalFirst Financing Agreement (the "CalFirst Agreement") entered into by CalFirst and Pellegrino on January 18, 2005, when Pellegrino signed the agreement.  [Counterclaim, ¶¶ 134-140].  On January 18, 2005, and again on January 19, 2005, Rheon advised both Pellegrino and CalFirst that it would not ship the machines that Pellegrino intended to purchase from CalFirst

unless it obtained either (1) payment in full from either Pellegrino or CalFirst; or (2) a purchase order or directive from CalFirst to ship the machines to Pellegrino.  [Counterclaim, ¶37].  In response, on January 19, 2005, Rah-miel Mitchell, a CalFirst Account Executive, sent a copy of ***the executed CalFirst Agreement*** to Rheon and explicitly instructed Rheon to "go ahead and start shipping" the machines to Pellegrino.  [Counterclaim, ¶38 (agreement attached hereto as Exhibit "A")].  Pursuant to CalFirst's directive, Rheon shipped the machines on January 19, 2005.  [Counterclaim, ¶39].  CalFirst's action in forwarding a copy of the executed CalFirst Agreement to Rheon and instructing Rheon to "go ahead and start shipping" the machines to Pellegrino, demonstrates not just that Rheon was a third-party beneficiary of the CalFirst Agreement, but also that at the time the CalFirst Agreement was forwarded to Rheon, a contract existed between CalFirst and Pellegrino.[1]

For purposes of the present Motion, CalFirst argues that Rheon has "admitted" that no contract existed between CalFirst and Pellegrino on the basis that "Rheon admits in its Counterclaim that (a) CalFirst refunded Pellegrino's deposit [on March 23, 2005] and took the position that no financing agreement existed . . . and (b) Pellegrino likewise [on May 2, 2005] disavowed any contract with CalFirst . . . ."  [CalFirst's Memorandum of Law in Support of Motion, p. 9].  Rheon's so-called "admissions" clearly do not demonstrate that a contract did not exist between CalFirst and Pellegrino, but rather recite the efforts made by both CalFirst and Pellegrino to disclaim the existence of a contract (and therefore avoid liability) several months after Rheon had shipped machines valued at $171,000 to Pellegrino in reliance upon CalFirst's

---

[1]    CalFirst attempts to impose the terms of the CalFirst Agreement on Rheon.  [CalFirst's Memorandum of Law in Support of Motion, p. 8].  The terms of the Agreement are, however, not relevant to the present dispute.  Instead, CalFirst's act of forwarding the Agreement, rather than any terms within the Agreement, is what is relevant in that CalFirst's act was intended to cause, and in fact did cause, Rheon to rely upon CalFirst's commitment to finance the machines as reflected through the act of forwarding the Agreement.

representation to Rheon that a financing agreement had been entered into between CalFirst and Pellegrino (through CalFirst's forwarding of the executed CalFirst Agreement to Rheon on January 19, 2005, with explicit instructions to "go ahead and start shipping" the machines to Pellegrino). [Counterclaim, ¶38]. The fact that parties to a contract may later attempt to disavow the contract does not mean that a contract did not exist in the first instance. *See, e.g.*, *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 615 n.16 (W.D. Pa. 2000) (noting that "the intent of the parties at the time the contract was formed . . . provides the relevant focus" to interpreting the contract not "subsequent revision").

Without question, for purposes of prevailing on a motion to dismiss, CalFirst has failed to prove "that no relief could be granted under any set of facts that could be proved consistent with the allegations," that Rheon has asserted with respect to its breach of contract claim against CalFirst, and more specifically, as to whether a contract between CalFirst and Pellegrino existed. *Orelski*, 337 F. Supp. at 698. Therefore, CalFirst's Motion to Dismiss with respect to Rheon's breach of contract claim should be denied.

> **B.    Rheon's "Unjust Enrichment" Claim Is Presented As An Alternative Claim To Its Breach Of Contract And Therefore Rheon Is Entitled To Recover The Same Amount Of Damages Under Either Theory, But May Not Recover Under Both Theories.**

CalFirst asserts that Rheon's "unjust enrichment" claim (Count IX) should be dismissed, because "the Counterclaim does not even allege that CalFirst received or retained any benefit, let alone any benefit conferred by Rheon." [CalFirst's Memorandum of Law in Support of Motion, p. 10]. Rheon's "unjust enrichment" claim arises out of an implied contract and sounds in quantum meruit terms. *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000). In that regard, "[q]uantum meruit is a quasi-contractual remedy in which a contract

is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." *Id*. (citations omitted).

In the present matter, Rheon's "unjust enrichment" claim is presented as an alternative count to its breach of contract claim. Therefore, based upon the Court's assessment of those claims, Rheon would be entitled to recover at most under one, but not both, of the claims.[2] Within the breach of contract claim, Rheon asserted that "CalFirst has still not reimbursed Rheon for the machines and thus Rheon has suffered damages at least in the amount of $171,000." [Counterclaim, ¶ 146]. In the breach of contract context, CalFirst's alleged liability results from the fact that "CalFirst breached the leasing contract by telling Rheon to ship the machines and then failing and refusing to perform under the terms of the contract, . . . breached the contract by failing to pay Rheon for the machines Rheon furnished pursuant to the leasing contract . . . [and] also breached its leasing contract by requiring Pellegrino to provide personal guarantees weeks after Rheon had shipped and installed the machines and after Pellegrino had begun production on the machines." [Counterclaim, ¶¶ 141-144].

In contrast, in the "unjust enrichment" / "quantum meruit" context, Rheon's basis for liability against CalFirst changes, but not its alleged damages. Specifically, liability for the "unjust enrichment" claim, as an alternative to the breach of contract claim, is based on the allegation that Rheon is entitled to relief based "on representations by Pellegrino and CalFirst that Pellegrino had obtained financing for the machines." [Counterclaim, ¶ 148]. The asserted damages are unchanged constituting an amount of at least $171,000 as stated in the breach of contract claim. [Counterclaim, ¶ 146]. As a result of the above, CalFirst's argument that Rheon

---

[2]    It should be noted that Rheon's remaining claims, namely for "promissory estoppel" (Count X) and "account stated" (Count XI), are similarly presented as alternative counts to Rheon's breach of contract claim. Therefore, Rheon has pled an entitlement to recover against CalFirst at most on the basis of one of its four asserted causes of action.

has not stated a claim for "unjust enrichment" fails and CalFirst's Motion to Dismiss with respect to that claim should be denied.

### C. A Viable Claim Of "Promissory Estoppel" Is Plainly Stated In Rheon's Counterclaim

CalFirst asserts that "Rheon's ['promissory estoppel'] claim should be dismissed because it fails to state facts sufficient to establish even one of the requisite elements." [CalFirst's Memorandum of Law in Support of Motion, p. 11]. The Supreme Court of Pennsylvania has stated that in order to maintain an action for promissory estoppel, the aggrieved party must allege three elements: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 610 (Pa. 2000). As demonstrated below, Rheon's Counterclaim unequivocally asserts the three required elements of a promissory estoppel claim. Therefore, CalFirst's argument to the contrary should be disregarded by this Court.

With respect to the first element, requiring an allegation that "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee," Rheon's Counterclaim specifically alleges that "[o]n January 19, 2005, through its directive to Rheon to 'go ahead and start shipping out the machines', and delivery of the CalFirst Financing Agreement, CalFirst promised Rheon that it would pay the amount referenced in the invoice dated January 19, 2005." [Counterclaim, ¶ 154]. CalFirst makes two arguments as to why the above allegation does not sufficiently allege the first element of a "promissory estoppel" cause of action.

First, CalFirst states, "Rheon's claim for payment is not supported by any alleged promise to purchase the machines." [CalFirst's Memorandum of Law in Support of Motion, p. 11]. CalFirst's first argument is immaterial because Rheon has not alleged that CalFirst made a promise "to purchase the machines," which was clearly Pellegrino's role in the transaction, but rather that CalFirst promised "it would pay the amount referenced in the invoice dated January 19, 2005," as a result of CalFirst's role as the provider of financing for the transaction. [Counterclaim, ¶ 154]. On that point, it is important to note that Rheon has also alleged that the January 19th directive sent by CalFirst was sent in response to the fact that "[o]n January 18, 2005, and again on January 19, 2005, Rheon advised both Pellegrino and CalFirst that it would not ship the machines unless it obtained either (1) payment in full from either Pellegrino or CalFirst; or (2) a purchase order or directive from CalFirst to ship the machines to Pellegrino." [Counterclaim, ¶ 154]. Therefore, clearly the promise provided by CalFirst was a promise sent in response to Rheon's request for assurances of payment through financing, not payment "to purchase the machines" as CalFirst attempts to argue.

Second, CalFirst argues that "the Proposal, on its face, cannot be reasonably interpreted to comprise a contract between CalFirst and Pellegrino." [CalFirst's Memorandum of Law in Support of Motion, p. 12]. The basis for CalFirst's argument is that the document forwarded by CalFirst to Rheon stated "OFFER ONLY," "offer is subject to the review and acceptance of Lessor's Finance Committee," and that the transaction "would be documented on CalFirst's standard lease documentation." [CalFirst's Memorandum of Law in Support of Motion, p. 12]. Even if true, clearly at the motion to dismiss phase, an open factual question remains as to whether CalFirst made a promise to Rheon and could have "reasonably expected to induce action or forbearance on the part of the promisee," given that the same document, the CalFirst

Agreement, that was sent to Rheon was (1) executed by CalFirst and (2) "explicitly instructed Rheon to 'go ahead and start shipping' the machines to Pellegrino." [Counterclaim, ¶38 (attached hereto as Exhibit "A")]. The "reasonableness" of whether CalFirst could have expected to induce action or forbearance by Rheon based on the communication described above can not presently be determined as a matter of law without additional discovery.

As to the second element, whether Rheon "actually took action or refrained from taking action in reliance on [CalFirst's promise]," CalFirst argues that because "Rheon admits that '[t]he precise financing method was a non-essential term [of the contract] that governed only the timing of the delivery of the machines," that Rheon has not alleged that it acted "in reliance on any alleged promise by CalFirst." [CalFirst's Memorandum of Law in Support of Motion, p. 12]. As an initial matter, CalFirst's argument is plainly erroneous as it is dependant upon an identification of what was and was not an essential term of the agreement between CalFirst and Pellegrino to which Rheon was a third party beneficiary. As the claim presently being analyzed is for "promissory estoppel," the essential or non-essential nature of any given contractual term is not relevant. More importantly, however, Rheon has unquestionably alleged, for purposes of surmounting a motion to dismiss, that Rheon "relied upon [CalFirst's] promise by shipping the KN400 machines to Pellegrino [and that] Rheon would not have shipped the KN400 machines to Pellegrino had CalFirst not made the promises and representations . . . ." [Counterclaim, ¶¶ 155-156]. Moreover, as noted above, Rheon's reliance resulted directly from, as alleged in the Counterclaim, that "[o]n January 18, 2005, and again on January 19, 2005, Rheon advised both Pellegrino and CalFirst that it would not ship the machines unless it obtained either (1) payment in full from either Pellegrino or CalFirst; or (2) a purchase order or directive from CalFirst to

ship the machines to Pellegrino." [Counterclaim, ¶ 154]. Therefore, the second element of a "promissory estoppel" claim is clearly well pled.

Similarly, the third element requiring that "injustice can be avoided only by enforcing the promise," is also well pled. Specifically, Rheon asserts that "[i]njustice will result if CalFirst's promise to pay Rheon is not enforced," because, "Rheon would not have delivered the KN400 machines without payment or assurance that the financing arrangements for the machines had been completed and instructions to ship from CalFirst [and because] CalFirst has benefited at Rheon's expense by failing to pay, or arrange for payment, of $171,000 to Rheon in exchange for Rheon's delivery of the KN400 machines to Pellegrino." [Counterclaim, ¶¶ 158-160]. CalFirst seeks to set aside Rheon's allegations at the present time on the basis that "[t]he equities would not be served by forcing CalFirst to provide financing . . . ." [CalFirst's Memorandum of Law in Support of Motion, p. 13]. CalFirst's conclusory assessment is clearly premature at this preliminary stage of the litigation, particularly in light of CalFirst's alleged "unclean hands" as stated throughout Rheon's Counterclaim.

For example, Rheon alleges that CalFirst failed to disclose to Rheon that on or about January 27, 2005, at the latest, the financing transaction between CalFirst and Pellegrino was not consummated due to Pellegrino's refusal to provide personal guarantees. [Counterclaim, ¶¶55-58]. Specifically, CalFirst failed to advise Rheon that CalFirst did not believe it was obligated to pay the January 19, 2005 invoice because of Pellegrino's failure to consummate the financing transaction. [Counterclaim, ¶58]. Further, CalFirst subsequently failed to disclose to Rheon that CalFirst had, by returning Pellegrino's deposit check on March 23, 2005, terminated the CalFirst Financing Agreement to which CalFirst and Pellegrino were parties. [Counterclaim, ¶68]. Again, CalFirst did not disclose to Rheon that CalFirst did not intend to pay the invoice that was

submitted by Rheon upon the January 19, 2005 directives of CalFirst.  [Counterclaim, ¶68].  In fact, it was not until late April and early May, 2005, that Rheon was finally made aware by Pellegrino, *not CalFirst*, that Pellegrino had not consummated a financing arrangement with CalFirst and that Pellegrino was disavowing its contract with CalFirst.  [Counterclaim, ¶¶78-79].  Therefore, based upon CalFirst's alleged conduct as described above, CalFirst's conclusory dismissal of the third element of Rheon's "promissory estoppel" claim, namely that "injustice can be avoided only by enforcing [CalFirst's] promise," is ill-founded.  As a result of the above, CalFirst's Motion to Dismiss with respect to Rheon's "promissory estoppel" claim should be denied.

> **D.    The Facts Pled By Rheon Are Sufficient For The "Account Stated" Claim To Withstand A Motion To Dismiss**

CalFirst asks this Court to dismiss Rheon's "Account Stated" claim (Count XI) on the basis that "[i]t is inappropriate to assert an 'account stated' against CalFirst because the facts alleged in the Counterclaim belie any notion that CalFirst has an 'account' with Rheon, had any dealings with Rheon, or acknowledged any transaction with Rheon."  [CalFirst's Memorandum of Law in Support of Motion, p. 14].  CalFirst's argument might be compelling if not for the fact that it is wholly unrepresentative of the allegations actually made by Rheon in its Counterclaim.

Under Pennsylvania law, "[a]n account stated has been defined as an account in writing, examined or expressly or impliedly accepted by both parties thereto, as distinguished from a simple claim or a mere summary of accounts."  1-18t *Pennsylvania Business Law Encyclopedia (PLE)*, § 512 (Mathew Bender 2004) (citing *Leinbach v. Wolle*, 211 Pa. 629, 61 A. 248 (1905), *Robbins v. Weinstein*, 143 Pa. Super. 307, 17 A.2d 629 (1941), and *McGinn v. Benner*, 180 Pa. 396, 36 A. 925 (1897)).  The allegations in the Counterclaim reflect that in the present matter a written account was accepted by both CalFirst and Rheon in that "[o]n January 19, 2005, through

[CalFirst's] directive to Rheon to 'go ahead and start shipping out the machines', and delivery of the CalFirst Financing Agreement, CalFirst promised Rheon that it would pay the amount referenced in the invoice dated January 19, 2005." [Counterclaim, ¶ 162].  Thereafter, Rheon relied upon CalFirst's promise to pay by shipping the KN400 machines to Pellegrino and submitting an invoice to CalFirst for payment.  [Counterclaim, ¶ 163].  At no point after receipt of such invoice did CalFirst object to the invoice or indicate that it did not intend to honor the invoice.  [Counterclaim, ¶ 164].

As a result, with respect to Rheon's "account stated" claim, CalFirst has not established that Rheon has failed to allege facts, which, if ultimately proven to be true, would entitle Rheon to relief.  *Nami*, 82 F.3d  at 65.  Therefore, CalFirst's Motion to Dismiss with respect to Rheon's "account stated" claim should be denied.

## CONCLUSION

For the reasons set forth above, Rheon respectfully requests that the Court deny CalFirst's Motion to Dismiss Counterclaim Counts VIII, IX, X & XI pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

RHOADS & SINON LLP

By:     /s/ Robert J. Tribeck
Robert J. Tribeck, Esquire
Attorney I.D. No. 74486
Rhoads & Sinon LLP
One South Market Square, 12th Floor
Harrisburg, PA 17108-1146

Dated:  November 7, 2005            Attorneys for Defendant, Rheon U.S.A., Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2005, a true and correct copy of the foregoing Brief in Opposition to the Motion to Dismiss Counterclaim Counts VIII, IX, X & XI pursuant to Fed. R. Civ. P. 12(b)(6) was served by means of electronic service in accordance with the Western District Local Rules, upon the following:

**<u>Jmead85@aol.com</u>**

John J. Mead, Esquire
Scarpetti & Mead Law Firm
1001 State Street, Suite 800
Erie, PA  16501

**<u>jpendleton@mccarter.com</u>**
**<u>lbonsall@mccarter.com</u>**

B. John Pendleton, Esq.
Lisa S. Bonsall, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

/s/ Robert J. Tribeck_____
Robert J. Tribeck