UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PELLEGRINO FOOD PRODUCTS, INC., | : |
| Plaintiff, | : Case No.: 1:05-CV-00189 |
| v. | : |
| RHEON U.S.A., | : |
| Defendant, | : |
| v. | : |
| PELLEGRINO FOOD PRODUCTS COMPANY, INC. a/k/a PELLEGRINO FOOD PRODUCTS, INC., | : |
| Counterclaimant Defendant, | : |
| and | : |
| CALIFORNIA FIRST LEASING CORPORATION, | : |
| Counterclaim Defendant. | : |

**CONSOLIDATED REPLY OF COUNTERCLAIM
DEFENDANT CALIFORNIA FIRST LEASING CORPORATION
TO PLAINTIFF'S AND COUNTERCLAIM PLAINTIFF'S OPPOSITIONS TO ITS
<u>MOTION FOR CHANGE OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)</u>**

I. **INTRODUCTION**

Both Pellegrino and Rheon have opposed California First Leasing Corporation's ("CalFirst's") Motion for Change of Venue ("Motion") by presenting an incomplete picture of the claims and evidentiary issues in this case. In brief, their oppositions ignore or attempt to obscure the following facts:

- Two of the three parties in this action are located in Irvine, California – within the Southern Division of the Central District of California (the "Central District").

- The Rheon machines that are the subject of this matter (the "Machines") were manufactured in and shipped from Irvine, California. Rheon has not informed the Court regarding the whereabouts of evidence relating to the Machines' design and manufacture, but such evidence would presumably be found in Irvine (and will undoubtedly be sought by Pellegrino).

- The majority of the communications pertinent to Rheon's claims against CalFirst took place entirely in Irvine, California, with some communications either originating from or received in Irvine.

- Since the 1990 revision of 28 U.S.C. § 1391(a) to eliminate the plaintiff's residence as a basis for venue, the residence of the plaintiff is no longer a consideration in the analysis of a motion to change venue.

- Pellegrino's claim that "at least ten witnesses" in Warren, Pennsylvania will testify is unsupported by any evidentiary showing that would enable the Court to consider whether the proposed testimony of these unnamed witnesses is indeed material, or simply cumulative.

1

- Neither Pellegrino nor Rheon has presented evidence – as CalFirst has – that any material witness would be unavailable as a result of a transfer to the Central District.

- Public factors do favor venue in the Central District, due to local interest in a dispute involving two local companies and a locally manufactured product, and in light of the applicability of California law and the potential requirement of alternative dispute resolution within the Central District.

For all of these reasons, CalFirst respectfully requests that its Motion be granted.

## II. CALFIRST HAS SHOWN THAT PRIVATE FACTORS STRONGLY FAVOR TRANSFER OF VENUE TO THE CENTRAL DISTRICT.

### A. Plaintiff's Residence No Longer Creates a Presumption Against Transfer.

In their oppositions, both Pellegrino and Rheon emphasize the fact that this action is venued where Plaintiff resides, and Rheon argues that this is an important factor to be considered. However, Rheon neglects to inform the Court that the case cited for this proposition – *Eberhart v. Baker*, 652 F.Supp. 1475 (W.D.Pa. 1987) – was decided prior to Congress' enactment of Section 311 of the Judicial Improvement Act of 1990, Pub.L. 101-650 (Dec. 1, 1990), significantly amending the former venue statute, 28 U.S.C. § 1391(a) (1986), which had permitted venue "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." As a result, Section 1391 no longer recognizes venue based on a plaintiff's residence. Indeed, the continuing viability of the presumption in favor of a plaintiff's choice of forum for purposes of determining venue is questionable where the plaintiff has chosen its home state as the forum, as in the present case. *Reynolds Publishers, Inc. v. Graphics Financial Group, Ltd.*, 938 F.Supp. 256, 261 (D.N.J.,1996).

2

Pellegrino also mentions that CalFirst and Rheon are larger companies than Pellegrino, suggesting that this action therefore should proceed in Pellegrino's home state. This factor should not be accorded any significant weight, as Pellegrino has made no showing that litigating in California would cause it undue financial hardship. Indeed, Pellegrino signed the Proposed Lease, including the venue provision requiring dispute resolution within the Central District. Having signed a document requiring consent to personal jurisdiction and to dispute resolution in California, Pellegrino cannot credibly claim that it should not be required to litigate in California.

Thus, the fact that Pellegrino is located in Warren, Pennsylvania should carry little or no weight in the analysis before this Court. Pellegrino is entitled to no more than the deference generally accorded a plaintiff's choice of venue, and this deference may be overcome by other factors, such as the convenience of key witnesses. *Lomanno v. Black*, 285 F. Supp. 2d 637 (E.D. Pa. 2003). CalFirst's Motion established that one of its key witnesses is unavailable outside of California, and that another of its key witnesses would suffer physical hardship if forced to travel to Pennsylvania. As discussed below, neither Pellegrino nor Rheon has made a similar showing with respect to any of their respective key witnesses.

**B.      All Claims in This Case Have a Nexus with California.**

Not surprisingly, both Pellegrino and Rheon have opposed CalFirst's Motion by emphasizing the facts and issues surrounding Pellegrino's claims against Rheon and attempting to minimize the facts and issues surrounding Rheon's claims against CalFirst. Their arguments are not persuasive for two reasons. First, "venue must be proper for each claim in a case with multiple claims." *Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States and Canada,* 812 F. Supp. 509, 517 (E.D. Pa.1992). Neither opposing party addresses the fact that the Central District is the only appropriate venue for Rheon's claims against CalFirst.

3

Second, even focusing solely on Pellegrino's product claims against Rheon, it appears that both Rheon and Pellegrino have presented to the Court only a partial picture of the evidence pertinent to these claims, and that a full picture would reveal a stronger nexus to the Central District for these claims as well.

### 1. <u>The Central District Is the Only Appropriate Venue for the Claims Against CalFirst.</u>

The opposing parties cannot deny that all of the communications pertinent to Rheon's claims against CalFirst either took place in their entirety in Irvine, California, or were originated or received by individuals located in Irvine, California. Rheon attempts to obscure this fact by cleverly arguing that the January 19, 2005 interchange between Rah-miel Mitchell ("Mitchell") at CalFirst and Clare Douglas at Rheon had an *effect* in Warren, Pennsylvania – *i.e.*, it resulted in the shipment of the Machines to Warren, Pennsylvania. However, CalFirst's liability (if any) to Rheon turns not on the destination of the Machines, but on the nature of the communications that took place in Irvine, California and their alleged effect on the actions of Rheon employees in Irvine, California.

In response to CalFirst's argument that the venue provision in the Proposed Lease requires alternative dispute resolution within the Central District, Rheon counters that the venue provision affects only two out of fourteen claims in this case. Rheon's argument is flawed in two respects. First, the venue provision in the Proposed Lease applies to "**ALL DISPUTES, WHETHER BASED IN TORT OR CONTRACT, RELATING TO OR ARISING OUT OF THIS LEASE.**" (Mitchell Aff., Exh. "B"; emphasis added). Thus, were the Court to rule in Rheon's favor on the issue of the existence of a lease agreement, the venue provision in the Proposed Lease may very well encompass most of the claims in this action, which can be

4

described as "relating to" or "arising out of" the Proposed Lease. Second, Rheon's argument is flawed because there is absolutely no precedent supporting a venue analysis that focuses on the *number* of claims. The number of alternative legal theories that can be brought to bear upon a single nucleus of facts is often limited only by the ingenuity of counsel. Clearly, the focus should be on the facts and primary rights involved.

Here, the various claims asserted by Rheon and Pellegrino may be grouped into two primary sets of facts and claims. The first set pertains to Pellegrino's product claims – *i.e.*, whether Rheon's Machines functioned as represented and whether Rheon is liable to Pellegrino for any damages resulting from Pellegrino's use of the Machines. The second set pertains to the question of which party is liable – and to what extent – to Rheon for payment for the Machines. Pellegrino's product claims certainly have a nexus to Warren, Pennsylvania; as shown below, however, they have a nexus to the Central District as well and could as reasonably be litigated there. The claims concerning payment for the Machines – including the claims against CalFirst – are clearly dominated by issues regarding communications that took place exclusively in Irvine, California, or at least originated or were received in Irvine.

Thus, viewing in totality the issues raised by the claims in this matter, the Central District is the appropriate venue, and CalFirst's Motion should be granted.

### 2. Pellegrino's Product Claims Also Involve Evidence Located in the Central District.

The product claims do, of course, involve evidence located in Warren, Pennsylvania. Rheon makes much of the fact that Gary Seiffer, the regional sales representative that negotiated with Pellegrino and participated in the installation of the Machines and follow-up visits, is based in Connecticut.

5

Significantly, however, Rheon is silent regarding the location of its evidence pertaining to the design and manufacture of the Machines as these matters relate to the Machines' output capabilities. Pellegrino will, without doubt, seek discovery of such evidence, and CalFirst would venture that any engineering and manufacturing information would be located at Rheon's plant and laboratory in Irvine, California.[1] Thus, were Rheon to disclose to the Court the location of such evidence, an even firmer nexus to the Central District would likely appear for Pellegrino's product claims.

A frank assessment of the evidentiary issues raised by *all of the claims* in this case would lead to the conclusion that the Central District is the most convenient and appropriate venue.

C. **Neither Pellegrino nor Rheon Has Made a Satisfactory Showing That Any Material Witnesses Would Be Unavailable or Unduly Inconvenienced By Litigating in the Central District.**

As noted above, Rheon points to Gary Seiffer, its local sales representative in Connecticut, as its "key witness." Mr. Seiffer's testimony will clearly be germane to Pellegrino's product claims. However, Rheon disingenuously omits any discussion of the two Rheon employees in Irvine who will undoubtedly be its key witnesses with respect to the claims against CalFirst, as these individuals had direct communications with Mitchell, Michael Curtis ("Curtis") and James Motley at CalFirst concerning CalFirst's position on financing Pellegrino's acquisition of the Machines (including the controversial January 19, 2005 discussions). Thus, from a convenience standpoint, Rheon is inexplicably taking a position that favors one of its employees but that will inconvenience at least two other employees. It is also important to note that Mr. Seiffer works for an employer located in Irvine, California. He is within Rheon's

---

[1] Attached hereto as Exhibit "A" are pages printed from Rheon's website, depicting its Irvine and neighboring facilities as including a research laboratory and various plants.

6

control, and his job responsibilities evidently already include travel (perhaps even periodically to Rheon's headquarters in Irvine).

Pellegrino conclusorily claims that "at least ten witnesses will testify as to the problems with the machines, the attempts to fix the machines, the resulting damages to Pellegrino (including lost sales and profits), negotiations between Rheon and Pellegrino, and possibly negotiations between Pellegrino and CalFirst." (Pellegrino's opposition at pgs. 3-4) Since Pellegrino has presented no evidence regarding the identity of these witnesses and the substance of each witness's anticipated testimony, this Court is not properly equipped to consider the weight to be accorded the inconvenience to these unknown witnesses. There is no evidence as to which of these witnesses are material, the degree of their involvement with the issues relevant to this matter, or whether their proposed testimony would simply be cumulative. The only witness identified apart from Thomas Pellegrino is his 80-year-old father, who is in poor health. However, Pellegrino has not informed the Court of the import or necessity of the elder Pellegrino's testimony, or even the degree of his involvement with the Machines or in Pellegrino's day-to-day business (especially given his poor health). Pellegrino also mentions two former employees, but again, without any showing regarding the substance – let alone the materiality – of any testimony by these unnamed witnesses.

As stated by this Court in an earlier decision:

> I am persuaded to consider only the convenience or inconvenience of those witnesses who have been identified as probable witnesses and the substance of whose testimony appears to be competent and material to the trial. [Citation omitted.] It is necessary to set out by way of affidavit the substance of the evidence of witnesses in order that its materiality can be considered. ... For the same reason, <u>the inconvenience of the ten witnesses named by the plaintiff cannot be considered since the substance and necessity of their testimony is not clearly revealed.</u>

7

*Hawkins v. National Basketball Ass'n*, 295 F.Supp. 103, 106 -107 (W.D.Pa. 1969) (emph. added). [2]

By contrast, CalFirst's Motion presents a detailed factual background that is supported by evidence. CalFirst has identified its key witnesses and set forth the specific difficulties with presenting testimony in Warren, Pennsylvania. Curtis, a material witness as he was very much involved in communications with Pellegrino and Rheon, is beyond the subpoena power of this Court and, as an ex-employee, outside CalFirst's control. He has indicated that he would not willingly travel to Pennsylvania for proceedings in this matter.[3] While it is true that testimony may be presented by video, CalFirst should not be prejudiced with the unavailability of a key witness for live testimony at trial. Mitchell, unquestionably a key witness, has provided an affidavit indicating that the extended travel required to appear in Pennsylvania would cause him physical suffering.

Neither Rheon nor Pellegrino has made any similar evidentiary showing that a material witness would be unavailable or unduly inconvenienced by litigation in the Central District.

---

[2]    Were CalFirst to refer in blanket fashion to all employees that had any contact whatsoever with the Pellegrino proposed transaction, CalFirst could also represent to the Court that there are a larger number of witnesses. CalFirst chose to present the Court only with information regarding those witnesses CalFirst considers material. However, as noted in its Motion, it is possible that Pellegrino and/or Rheon may seek discovery from other CalFirst employees that have not been discussed in CalFirst's Motion.

[3]    The concurrently filed Affidavit of Barbara H. Bumblis sets forth her recent telephone conversation with Curtis, wherein Curtis confirmed that, due to personal and professional commitments, he would not willingly travel to Pennsylvania – or anywhere out-of-state – to testify in this case.

Based on the evidence before the Court, witness convenience and availability strongly weigh in favor of transferring this matter to the Central District.[4]

### III. PUBLIC FACTORS FAVOR VENUE IN THE CENTRAL DISTRICT.

A number of the public factors identified by the Third Circuit in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995), are neutral in the analysis of CalFirst's Motion. This is not an unusual circumstance, given the nature of the public factors (*e.g.*, judgment enforceability, court congestion, public policies, etc.), and the neutrality of certain of the public factors should not be construed as factors *against* a transfer of venue. Rather, this Court should focus on the fact that, in addition to the private factors favoring a transfer, several public factors do, in fact, favor transfer to the Central District.

Pellegrino claims that local interest in Warren, Pennsylvania favors maintaining venue in this Court. The Central District, however, has a greater local interest in the dispute between two Irvine, California companies – Rheon and CalFirst – as well as in adjudicating damages arising from a product manufactured in Irvine, California.

Practical considerations and judicial familiarity with state law also favor the Central District. California law should apply to the dispute between Rheon and CalFirst, which involves communications that took place solely in California between two California companies. To the extent that Rheon's claims implicate CalFirst's purported obligations toward Pellegrino pursuant to the Proposed Lease, the Proposed Lease signed by Pellegrino provides for the application of

---

[4] Rheon cites an unpublished decision, *Access Fin. Lending Corp.*, 1996 U.S. Dist. LEXIS 14073, for the proposition that "when travel will be required by multiple parties regardless of the choice of venue, the presumption against a transfer or venue is not overcome." There is no published authority for this purported bright line rule that would apparently preclude a transfer of venue any time that witnesses reside in different districts, since someone would have to travel regardless of the venue in such cases. Rather, case precedent clearly requires a weighing of the relative merits of each venue with respect to witness convenience and availability.

9

California law. In the event that Rheon prevails on its argument that CalFirst somehow entered the financing lease (which CalFirst denies), then the alternative dispute resolution, choice of forum, and choice of law provisions in the Proposed Lease would apply. Thus, judicial economy would be best served by having this matter proceed in the Central District, given the potential that alternative dispute resolution under California law could be required.

For these reasons as well, CalFirst's Motion should be granted.

## IV. CONCLUSION

Counterclaim Defendant California First Leasing Corporation has met its burden of proving that a balancing of the pertinent factors weighs in favor of transfer of this action to the Central District of California (Southern Division). Thus, for the reasons set forth herein, CalFirst respectfully requests that this Honorable Court enter an Order granting the instant Motion to transfer venue to the United States District Court for the Central District of California (Southern Division).

Respectfully submitted,

**McCARTER & ENGLISH, LLP**


By:/s/ Lisa S. Bonsall
    LISA S. BONSALL, ESQ., *pro hac vice*
    Attorney I.D. No. 55452
    Four Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102
    Telephone: 973.622.4444
    Fax: 973.624.7070

    Attorneys for California First Leasing Corporation

Dated: November 28, 2005

# **EXHIBIT A**



department supports customers to carry out their food production plant design, and offers neccessary consultation. There are supporting sales agents in each country in Rheon Europe territory, connecting to promotional activites and progressive technical services.



### RHEON U.S.A. H.Q. OFFICE

Rheon U.S.A.(U.S.A. reserach laboratory) is loacated in Irvine,California equipped with the most advanced modern food processing facilities,conducting sales of Rheon's automated food processing machinery and providing customer services all across North,Central and South America.



### RHEON IRVINE MODEL PLANT/ORANGE BAKERY,INC.

In 1979, Orange Bakery was established in Irvine, California, as a frozen pastry production model palnt. Through Orange Bakery's total activity, experimental production and sales of high-value pastries are carried out and demonstrated to customers around the world. Besides preparing various products for the U.S. market, Orange Bakery distributed the idea of automated production of croissants throughout the United States. The sales program includes biannual broker meetings, where innovative information based on international market research is exchanged. In addition, Orange Bakery Charlotte plant proposes pre-proof product concept by supplying them to major supermarkets and bakeries.

### RHEON EL TORO MODEL PLANT/ORANGE BAKERY,INC. IRVINE EAST FACILITY




**RHEON PARKER MODEL PLANT/ORANGE BAKERY, INC. PARKER PLANT**

Rheon Parker Model Plant is located on a spacious 10,137 square meter site in Irvine, California.
The plant demonstrates the Stress Free® VM System and creates various bread products with high quality.



**ORANGE BAKERY, INC. CHARLOTTE PLANT**

Rheon Charlotte R&D Center intoroduces pre-proof concept involving dough fermenting and freezing, uniquely developed by Rheon, to the U.S. market. Production technology and product know-how are also provided. Computerized plant management information, from received orders management to product quality management, is also avaliable to customers.



**RHEON AUTOMATIC MACHINERY CO., LTD. TAIPEI BRANCH**

Rheon serves the Asian region based on this Taipei Branch, with a well-equipped laboratory for customers to conduct product tests.