UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PELLEGRINO FOOD PRODUCTS, INC., | : |
| Plaintiff, | : Case No.: 1:05-CV-00189 |
| v. | : |
| RHEON U.S.A., | : |
| Defendant, | : |
| v. | : |
| PELLEGRINO FOOD PRODUCTS COMPANY, INC. a/k/a PELLEGRINO FOOD PRODUCTS, INC., | : |
| Counterclaimant Defendant, | : |
| and | : |
| CALIFORNIA FIRST LEASING CORPORATION, | : |
| Counterclaim Defendant. | : |

**REPLY OF COUNTERCLAIM DEFENDANT CALIFORNIA FIRST LEASING CORPORATION TO COUNTERCLAIM PLAINITFF'S OPPOSITION TO MOTION TO DISMISS <u>COUNTERCLAIM COUNTS VIII, IX, X & XI PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

I.  **INTRODUCTION**

The arguments in Rheon's opposition (the "Opposition") to CalFirst's Motion to Dismiss (the "Motion") fail to address the material flaws in Rheon's claims against CalFirst. CalFirst's Motion should be granted because Rheon's claims are fatally flawed in the following regards:

<u>Count VIII, Breach of Contract (by Non-Party)</u>. Rheon cannot recover as a third-party beneficiary to a finance contract between CalFirst and Pellegrino because Rheon cannot plead facts sufficient to establish the existence of such a contract. It is undisputed that both purported contracting parties disclaim the existence of any lease finance agreement. Rheon's sole argument is that such a contract must exist since Rheon allegedly relied upon CalFirst's alleged representation that it would provide financing. This argument fails because a contract can only arise through a meeting of the minds of the contracting parties – not through representations made to a third-party. Rheon cannot create third-party beneficiary status by pleading that it thought a contract did or would exist when it is undisputed that it did not.

<u>Count IX, "Unjust Enrichment."</u> Rheon's Opposition does not respond at all to the grounds raised in CalFirst's Motion for dismissal of this claim – namely, that Rheon alleges no benefit conferred by Rheon upon CalFirst and unjustly retained by CalFirst. Rheon simply fails to allege the quintessential elements of an unjust enrichment claim: facts establishing defendant's receipt and retention of some benefit.

<u>Count X, "Promissory Estoppel."</u> Rheon does not allege that CalFirst actually made any promise to Rheon. Rheon instead alleges reasonable reliance on an alleged inferred promise to finance arising from CalFirst's request that Rheon ship the Machines to Pellegrino. This fails, as a matter of law, in the face of Rheon's own admissions that (a) it had already entered into a contract with Pellegrino on the date the request to ship was made, and therefore, could not have reasonably relied on any subsequent event, and (b) Rheon viewed financing by CalFirst as a non-

1

material term affecting only the timing of its shipment to Pellegrino – and not the fact of the shipment itself. Nor does Rheon provide any response to the grave injustice that would be invoked - not avoided - by forcing CalFirst to extend financing to Pellegrino, a party that is unwilling to be bound by CalFirst's terms and which CalFirst views as a credit risk, (even assuming the Court could force Pellegrino to accept financing from CalFirst). Rather, injustice should be avoided by requiring Pellegrino to pay for the Machines that it has possessed and used.

Count XI, "Account Stated" The facts in this case simply do not support a claim based on an "account stated." Rheon is not claiming that CalFirst has an "account" with Rheon, or that CalFirst agreed to pay Rheon for goods, but that CalFirst allegedly agreed to finance the amount owed on *Pellegrino's account*. Pennsylvania law is clear that an "account stated" exists only where the defendant agrees to liability on the account (if not the account balance itself). Here, CalFirst disclaims any liability whatsoever to Rheon.

For all of these reasons, CalFirst respectfully submits that the Court should grant its Motion to Dismiss each of Rheon's claims against CalFirst.

## II.  LEGAL ARGUMENT

### A.  Rheon's Breach of Contract Claim Fails Because the Facts Alleged – Even If Proven - Cannot Establish a Contract.

Rheon's attempt to salvage its breach of contract claim boils down to the following contention: since CalFirst allegedly represented to Rheon that a contract to finance existed with Pellegrino, and since allegedly Rheon relied on that representation, a contract therefore must have existed between CalFirst and Pellegrino to which Rheon can claim rights as a third-party beneficiary.

The alleged facts, as a matter of law, do not establish a cause of action for breach of contract. Rheon is essentially claiming that Party A's action, in representing to Party C that a contract exists between Party A and Party B, operates to create such a contract between Party A and Party B. No law supports this theory. The law is in fact to the contrary. Whether a contract exists turns upon the intent of the contracting parties. *See, Murphy v. Duquesne University Of The Holy Ghost,* 565 Pa. 571, 591, 777 A.2d 418, 429 (2001). The existence of a contract does not turn upon the belief – or even the reliance – of a stranger to the perceived contract.

It is undisputed that the two parties to the contract to which Rheon claims third party beneficiary status deny the existence of a contract. (Counterclaim at ¶ 79, Exh. "I")[1] As a matter of law, there must be a contract before there can be a breach. And of course, there must be a contract before anyone – and in particular a stranger to the contract – claims to be entitled to the benefits thereof.

The facts alleged by Rheon simply cannot establish the existence of a contract between CalFirst and Pellegrino. Consequently, Rheon cannot claim any rights as a third-party beneficiary, and its breach of contract claim should be dismissed.

### B. Rheon Has Not Alleged Facts Sufficient to State a Claim for Unjust Enrichment.

Rheon's opposition to CalFirst's Motion as to Count IX, "Unjust Enrichment," is a dissertation on alternative pleading, but entirely unresponsive to the grounds for dismissal raised by CalFirst's Motion. The Counterclaim fails to state a claim for unjust enrichment against CalFirst because it does not allege that Rheon conferred any benefit on CalFirst. To recapitulate, the elements of a claim for unjust enrichment are "benefits conferred on defendant by plaintiff,

---

[1] Rheon itself pleads a contract with Pellegrino that pre-exists any alleged financing agreement, and a financing agreement was not and was never represented to be a condition of its pre-existing contract with Pellegrino. (Counterclaim, ¶ 24, Exh. "A")

3

appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999), *app. denied*, 561 Pa. 700, 751 A.2d 193 (2000).

Rheon's Counterclaim utterly fails to allege any benefit conferred by Rheon and retained by CalFirst, a fact all but conceded by Rheon's Opposition. Rheon's brief simply ignores the defect and repeats a claim for the $171,000 purchase price of the Machines delivered to Pellegrino. There is no allegation that CalFirst received any money or any machines, or indeed that CalFirst received any benefit of any type from anyone at any time. Rheon's argument that it "is entitled to relief based 'on representations by Pellegrino and CalFirst that Pellegrino had obtained financing for the machines'" is patently deficient to establish any benefit to CalFirst as a matter of law. (Rheon's Opposition, p. 8). These allegations fail to satisfy the elements for an unjust enrichment claim, as set forth above. As such, Count IX, "Unjust Enrichment," is fatally flawed and should be dismissed.

### C.  Rheon Has Failed to State a Claim for Promissory Estoppel.

Rheon agrees that, in order to state a claim for promissory estoppel, it must adequately plead three elements: (1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 610 (Pa. 2000). Rheon's Counterclaim fails to plead these elements.

First, Rheon fails to allege CalFirst actually made any promise to Rheon. It seeks to force CalFirst to pay for the Machines, while conceding that CalFirst never purchased the

Machines or actually promised to pay for the Machines. (Opposition, p. 10)[2] In its Opposition, Rheon claims that it has adequately pled a promise by coupling the allegation that CalFirst asked Rheon to "go ahead and start shipping the machines" with the allegation that CalFirst had been advised that Rheon would not ship the Machines in the absence of either full payment or "a purchase order or directive from CalFirst to ship the machines to Pellegrino." (Opposition, p. 10; Counterclaim, ¶ 154) These factual allegations do not amount to a promise. Nowhere does Rheon allege that CalFirst actually promised Rheon that CalFirst would finance the purchase of the Machines.

Even assuming the truth of Rheon's allegations, they do not amount to anything more than sloppy practices on Rheon's part. Rheon alleges that it did not require a written lease agreement or even a firm commitment to finance as a condition of shipping goods; it concedes that all that it required to ship was a "directive" from CalFirst. Rheon repeats this mantra as if it somehow cures its pleading deficiencies. CalFirst, at Pellegrino's request, conveyed to Rheon a request to ship the Machines. At Rheon's request, CalFirst forwarded a copy of the Proposal signed by Pellegrino – but not by CalFirst. The Proposal stated on its face that it required approval by CalFirst's Finance Committee and was subject to further documentation. (Counterclaim, Exh. "B") Rheon did not request any further documentation. Assuming these allegations to be true, they simply do not allege a promise for purposes of a cause of action for promissory estoppel.[3]

As to the second element, Rheon asserts that it reasonably relied on events occurring on January 19 in shipping the Machines, while conceding that on January 18 it had already entered

---

[2] Rheon states that " . . . Rheon has not alleged that CalFirst made a promise 'to purchase the machines'..."
[3] And in fact such lax conditions are perhaps not unreasonable in the context of the pre-existing agreement between Rheon and Pellegrino whereby Rheon had already agreed to ship the Machines and the only question was when.

5

into a binding contract to deliver the Machines.[4] "The Rheon offer was accepted by Pellegrino on January 18, 2005, and stated only that Rheon would deliver the equipment and return Pellegrino's $3,000 deposit after the financing method was finalized." (Answer, ¶ 7) Rheon's admission that it had a contract with Pellegrino to deliver goods prior to the time that CalFirst "directed it to ship" forecloses any possible promissory estoppel. Rheon cannot have relied on CalFirst's alleged direction to ship when it had already promised Pellegrino that it would deliver the goods.

Rheon further admits that "[t]he precise financing method was a non-essential term that governed only the timing of delivery of the machines." (Affirmative Defenses at ¶ 16) Rheon now claims that the materiality or non-materiality of financing as a contract term has no bearing on the promissory estoppel claim (although it cites no authority for this proposition). This misses the point: Rheon admits that the financing method governed only the timing of delivery, not the delivery itself, and yet it now seeks to hold CalFirst liable for the price of the Machines on the grounds that it relied on CalFirst's alleged promise to finance. CalFirst's purported promise to finance could not induce Rheon to ship if, by Rheon's own admission, financing only affected the timing of the shipment of the Machines. Rheon does not allege any damage as a result of the timing, nor does it allege that it would not have entered into the transaction in the absence of the promised financing. As such, the second element of promissory estoppel has not been (and cannot be) adequately pled.

The third element is that "injustice can be avoided <u>only</u> by enforcing the promise." In this case, Rheon admits that the alleged promise is – at most – CalFirst's purported promise to finance Pellegrino's purchase of the Machines. There are two reasons why the third element of

---

[4] Rheon alleges clearly and repeatedly that the contract with Pellegrino was not contingent on financing. *See, e.g.* Answer at ¶¶ 6, 14; Counterclaim at ¶ 27.

6

promissory estoppel has not been met. First, it cannot be said that injustice can <u>only</u> be avoided by enforcing CalFirst's alleged promise to finance. Clearly, injustice would first and foremost be avoided through Pellegrino's payment for the Machines it has possessed and used to its profit.

Second, this Court cannot enforce a promise to enter into an indefinite financing transaction. This is particularly true where the other contracting party – Pellegrino – has withdrawn its offer. Would this Court order CalFirst and Pellegrino to enter into a lease transaction? If so, should personal guaranties be required, as was CalFirst's right under the Proposal? Can the Court force Thomas Pellegrino to personally guaranty payment to CalFirst if he refuses? What lease rate and other credit terms should be applied? These were issues that the parties could not resolve, and were in fact reasons why the proposed transaction never materialized into an agreement. These uncertainties render it impossible for this Court to enforce any purported agreement between CalFirst and Pellegrino, as Pennsylvania law has generally held that an order of specific performance must conform to the contract being enforced and that a court may not make a different contract for the parties. *See, Giesecke v. Pittsburgh Hotels*, 152 F.2d 689 (3d Cir. 1945). In *Himrod v. McFayden*, 283 Pa. 103, 106, 128 A. 733 (1925), the Pennsylvania Supreme Court held:

> Equity does not make contracts. It deals with those already made to prevent the intention of the parties from being frustrated by rigid rules of law or some mistakes of the parties. <u>The decree must always conform to the precise contract; the court will not make one for them.</u> (emphasis added).

The doctrine of promissory estoppel cannot be utilized to create or enforce any obligation greater than that under the original contract. Since Rheon suggests that, at most, CalFirst promised to finance Pellegrino's acquisition of the Machines, this Court cannot create or enforce an obligation greater than the financing contract. It cannot enforce the Proposed Lease because

Pellegrino withdrew its offer to enter into the Proposed Lease, and because the Court cannot enforce a contract where the precise terms have not been established.

Based on the facts alleged, Rheon failed to state even one of the elements of promissory estoppel. Since Rheon's promissory estoppel claim fails if even one of the requisite elements is missing, Count X for "Promissory Estoppel" should be dismissed.

### D. Rheon Fails to State a Claim for "Account Stated."

Rheon's claim for a purported "Account Stated" is simply inappropriate under the facts of this case. This action does not even concern any CalFirst "account" with Rheon; rather, Rheon alleges, at most, that CalFirst has an obligation to finance Pellegrino's "account balance" with Rheon. As explained in Ryon v. Andershonis, 63 Sch.L.R. 6, 42 Pa. D. & C.2d 86 (1967):

> To produce an account stated, the account must be rendered, and the other party must accept, agree to or acquiesce in the correctness of the account: David v. Veitscher Magnesitwerke Actien Gesellschaft, 348 Pa. 335, 341-42. Mutual assent to the correctness of the computation is essential to an account stated: Restatement, Contracts, §422.
> Here, there is no allegation that defendant assented to the correctness of the account submitted to him. On the contrary, it is alleged that defendant refused to pay it.

In Ryon v. Andershonis, since the defendant refused to pay the account submitted, the court dismissed the claim for "account stated."

Since CalFirst likewise disputes and refuses to pay the "account" submitted by Rheon, Rheon's Count XI, "Account Stated," should be dismissed.

### III. CONCLUSION

The Counterclaim does not allege any promise made or benefit received by CalFirst, and to require CalFirst to pay for goods it concededly never purchased or received would be patently unfair. Accordingly, Counterclaim Defendant California First Leasing Corporation respectfully

8

requests that this Court dismiss each and every claim asserted by Rheon against it (*i.e.*, Counts VIII, IX, X and XI of Rheon's Counterclaim).

Respectfully submitted,

**McCARTER & ENGLISH, LLP**


By:/s/ Lisa S. Bonsall
   LISA S. BONSALL, ESQ., *pro hac vice*
   Attorney I.D. No. 55452
   Four Gateway Center
   100 Mulberry Street
   Newark, New Jersey 07102
   Telephone: 973.622.4444
   Fax: 973.624.7070

   Attorneys for California First
   Leasing Corporation

Dated: November 28, 2005